**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00144-CR**
_____

**CHADWICK SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 356th District Court**
**Hardin County, Texas**
**Trial Cause No. 23828**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Chadwick Smith for the offense of possession of a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115 (West 2017).[1] Smith filed a motion to suppress, and after a hearing, the trial court denied the motion. Thereafter, Smith pleaded guilty. The trial court assessed punishment at

---

[1] We cite to the current version of the statute as subsequent amendments do not affect our disposition.

1

eleven years' confinement. In a single issue, Smith appeals the trial court's denial of his motion to suppress. We affirm.

## Hearing on Motion to Suppress

In his motion to suppress, Smith alleged that the evidence was seized pursuant to an "illegal stop, detention and/or arrest." According to Smith, the stop was without probable cause or reasonable suspicion and any evidence seized or statements made should be suppressed as fruits of an unlawful search and seizure.

At the suppression hearing, the State conceded that there was no warrant for the search. Officer Justin Holt (the "Officer") with the Silsbee Police Department testified that he stopped a motorcycle on the evening of June 3, 2015, because he could not see a legible license plate on the motorcycle. The Officer also explained that the paper tags "were all crinkled up and folded and dirty[,]" and although the motorcycle had a buyer's tag, the tag was not legible due to its condition and how it was fastened. Upon further investigation, after stopping the motorcycle the Officer also noticed other violations. The Officer observed that the rear tire was extremely underinflated and the tread was wearing through to the cords. At the hearing, the Officer identified Smith as the person he stopped.

The Officer explained that, upon stopping Smith, he also noted that "[t]he ignition wires appeared to have been cut, VIN numbers were ground down[]" and

the seat and fuel tank were not bolted down, and that he investigated whether the vehicle was stolen. Once he stopped the motorcycle, he could see that the front tire was also severely worn and was very slick. According to the Officer, he had dealt with Smith a couple of months earlier in a matter regarding methamphetamines and he had "firsthand knowledge" that he had "arrested the subject before with narcotics and with a weapon." The Officer also explained that he communicated by radio with a sergeant at the Hardin County Sheriff's Office Narcotics Division, and he recalled that the sergeant warned him of a possible weapon. According to the Officer, he also observed a rag or paper towel shoved into the "ram air induction system[.]" The Officer explained that nothing should have been in the air intake because that is where the air would channel into the air filter. Based on his observations of the vehicle, his knowledge of the suspect's past history, plus his conversation with the Narcotics Division, the Officer was looking at "possible concealment of narcotics[]" and a "possible stolen vehicle."

The Officer "ran" the tags for the motorcycle, and the vehicle appeared to belong to Triangle Motors. The motorcycle plates were from Triangle Motors, and at the time of the stop, the Officer had an open investigation into Triangle Motors for illegal distribution of plates and narcotics. When he asked Smith where he got the motorcycle, Smith told the Officer that the motorcycle was acquired "from a

3

Harris County police auction." And, Smith later told the Officer that his wife had a receipt for the motorcycle.

The Officer testified that he asked Smith for consent to search the rear compartment of the motorcycle, or the area under the seat, and Smith gave consent. The Officer found a purple container that he felt may have been used to conceal narcotics but that he did not find any narcotics inside the container. The Officer explained that he then confronted Smith about what might be underneath the fuel tank, and Smith did not give him a direct answer. According to the Officer, Smith was very nervous and sweating profusely. Smith removed the rear seat, and the Officer removed the fuel tank, after which the Officer located a "little side box . . . inside the air box." Inside the air box the Officer found approximately ten grams of methamphetamine.

The Officer testified that he believed he had probable cause to search more than the rear compartment of the motorcycle based on his prior knowledge of Smith with drugs and guns, a radio communication from another officer to be on the lookout for Smith with drugs, a "paper towel wadded up in the air box that [he could] visually see[,]" his experience with motorcycles, the fact that Smith was sweating profusely, and the fact that Smith was in an "excited state[]" when he responded to the Officer's questions. The Officer testified that he was personally familiar with the

4

model of the motorcycle that Smith was riding, and he explained as follows: "I have rebuilt them; repaired them; disassembled them down to motors, frames, swing arms, subframes, forks, front ends, wheels, the entire -- there is not a screw that I haven't undone or put back together." The State also offered into evidence a copy of the video of the stop taken from the Officer's patrol vehicle.

The trial court denied the motion to suppress. The court did not enter findings of fact and conclusions of law, and the appellate record does not reflect that any were requested. Smith pleaded guilty and filed a motion for new trial that was overruled as a matter of law.

## Issue

In a single issue, Appellant argues that the trial court abused its discretion by denying his motion to suppress. According to the Appellant, his detention was unlawful under the Fourth Amendment and Article I, section 9 of the Texas Constitution because the search was based on the detaining officer's "inarticulate hunches" that narcotics were being concealed on the motorcycle and, therefore, the officer lacked probable cause to search the motorcycle.

## Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App.

5

2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48.

We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 856); *see also Aguirre v. State*, 402 S.W.3d 664, 667 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("in the absence of specific findings, an appellate court's hands are tied, giving it little choice but to 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record[]'") (quoting *Ross*, 32 S.W.3d at 855). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014);

*Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855.

Applicable Law

Pursuant to the Fourth Amendment, a warrantless search is per se unreasonable unless it falls within an exception to the requirement for a warrant. *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). The "automobile exception" allows for the warrantless search of a vehicle "if it is readily mobile and there is probable cause to believe that it contains contraband." *See Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017); *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) (police may search a vehicle if they have probable cause to believe it contains evidence of a crime). The Officer testified that he observed Smith's motorcycle in motion, and the State offered video evidence of the motorcycle in motion. *See California v. Carney*, 471 U.S. 386, 391-92 (1985) (explaining that the "automobile exception" to the requirement of a warrant applies when a vehicle is being used on the highways). The Appellant does not challenge the fact that his vehicle was "readily mobile." Rather, he contends that the trial court erred because the search was based on the detaining officer's "inarticulate hunches"

that narcotics were being concealed on the motorcycle and, therefore, the officer lacked probable cause to search the motorcycle.

Probable cause exists when "the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime." *Brown v. State*, 481 S.W.2d 106, 110 (Tex. Crim. App. 1972); *see also Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). "Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede*, 214 S.W.3d at 24 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). If the totality of the circumstances demonstrate a "fair probability" of finding evidence at the location being searched, then the probable cause standard is met. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006). A court may consider "the training, knowledge, and experience of law enforcement officials" involved in the warrantless search. *See Wiede*, 214 S.W.3d at 25. Only a "minimal level of objective justification" on the part of the officer is required, and our "determination of reasonable suspicion must be based upon commonsense judgments and inferences about human behavior." *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *United*

9

*States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Immigration & Naturalization Serv. v. Dalgado*, 466 U.S. 210, 217 (1984)).

Analysis

In this case, the Officer testified that he made the initial stop based on his visual observation that the motorcycle lacked legible tags and that he also visually determined that the motorcycle had seriously worn tires. Once he stopped Smith, the Officer testified that he observed that the motorcycle's VIN numbers had been ground down, and that he suspected the vehicle might be stolen. Furthermore, the Officer explained that he personally knew Smith to have a history of involvement with methamphetamines, and that Smith was very nervous, sweating profusely, and in an excited state. The Officer testified that he observed something stuffed into the air intake of the motorcycle, that the seat of the motorcycle and fuel tank were not bolted down, and that based on his knowledge of motorcycles, he knew that nothing should be stuffed into the intake area. He also testified that he had been working an open investigation with Triangle Motors for distribution of illegal narcotics and that the temporary plate on the motorcycle indicated the motorcycle came from Triangle Motors.

In *Marcopoulous*, the Court determined that a suspect's furtive gestures, including his visits to a bar known for involvement with narcotics sales, were

insufficient to establish probable cause to search the suspect's vehicle under the "automobile exception." *See* 538 S.W.3d at 603-04. The Court explained that an officer's observations about the suspect may have provided reasonable suspicion to justify a temporary investigative detention, but that additional "indicators of drug activity" were necessary to tip the scale in favor of finding probable cause to search the vehicle. *Id.* at 604. By contrast, the record in this case includes evidence of numerous additional facts that provided additional indicators of drug activity beyond the arresting officer's initial basis for stopping Smith. Among other things, the Officer was very familiar with motorcycles, including the particular model Smith was driving, and the Officer had observed several indicators from the motorcycle and the suspect. For example, the Officer noticed something unusual stuffed into the air intake of the motorcycle. The Officer also observed that the motorcycle showed that it was registered to Triangle Motors, an entity the Officer personally knew to be associated with an open narcotics sales investigation, the Officer had specific knowledge that the suspect had previously been linked to narcotics, the suspect was nervous and sweating, and failed to give direct answers to certain questions, and the motorcycle's seat and gas tank appeared to be inadequately secured indicating to the Officer that contraband could be hidden in the motorcycle. Such "additional

11

indicators" of drug activity factually distinguish this case from *Marcopoulous* and would tip the scale in favor of finding probable cause. *See id.*

Considering the totality of the circumstances, the trial court could have reasonably concluded that the facts and circumstances within the knowledge of the Officer and of which the Officer had reasonably trustworthy information would warrant a reasonable and prudent man in believing that Smith had committed or was committing a crime or that the motorcycle contained contraband. *See Keehn*, 279 S.W.3d at 335; *Brown*, 481 S.W.2d at 110. The trial court could have reasonably concluded based upon the record that the Officer's warrantless search of the motorcycle was justified under the "automobile exception." *See Ross*, 456 U.S. at 825; *Story*, 445 S.W.3d at 732. Viewing the evidence in a light most favorable to the trial court's ruling, we conclude that the trial court did not err in finding that the State met its burden to demonstrate at least a minimal level of objective justification to justify the search of Smith's motorcycle. *See Sokolow*, 490 U.S. at 7; *Keehn*, 279 S.W.3d at 336. Accordingly, we overrule the Appellant's issue and affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

12

Submitted on March 30, 2018
Opinion Delivered June 13, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.