

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0931-16

---

### ANDREAS MARCOPOULOS, Appellant

### v.

### THE STATE OF TEXAS

---

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

---

KEASLER, J., delivered the opinion of the Court, in which HERVEY, ALCALA, RICHARDSON, NEWELL, AND WALKER, JJ., joined. YEARY, J., dissented. KEEL, J., filed a dissenting opinion, in which KELLER, P.J., joined.

## OPINION

Andreas Marcopoulos walked into a bar known for narcotics activity, stayed for three to five minutes, and then left. A Houston police officer subsequently pulled up behind Marcopoulos's vehicle and saw Marcopoulos make "furtive gestures" around the center console. When Marcopoulos committed a traffic violation, the officer stopped him, searched his vehicle, and found cocaine. The court of appeals concluded that this search was justified

under the automobile exception. We disagree and will reverse.

## I. FACTS AND PROCEDURAL POSTURE

On September 10, 2014, undercover Houston Police Officer J. Oliver was surveilling Diddy's Sports Bar ("Diddy's"), an establishment in Houston, Texas with a well-documented history of narcotics sales. Officer Oliver saw Marcopoulos enter the bar, leave within three to five minutes, and drive away. As Marcopoulos left, the officer followed him and observed him change lanes without signaling. Hoping to maintain his undercover status, Officer Oliver radioed for a uniformed officer to perform a traffic stop.

Officer T. Villa received this request and, upon stopping his marked police car behind Marcopoulos, noticed him make "furtive gestures" around the center console of his vehicle. Officer Oliver, driving next to Marcopoulos in an unmarked car, also observed these gestures. Officer Villa then activated his emergency lights, stopped Marcopoulos, and immediately arrested him. Villa searched Marcopoulos's vehicle and found two "baggies" of cocaine: one inside the center console and another between the center console and the passenger seat. Villa subsequently searched Marcopoulos's personal effects and found a third "baggie" of cocaine in his wallet.

Marcopoulos filed a pre-trial motion to suppress the evidence uncovered by the search, but his motion was denied. He pleaded guilty, reserving his right to appeal the trial court's ruling, and was placed on three years' deferred adjudication probation.

Before the First Court of Appeals, Marcopoulos claimed that the trial court abused its

discretion by denying his motion to suppress.[1] Marcopoulos argued that the search of his vehicle was unreasonable because it did not qualify as an inventory search and it exceeded the scope of his arrest.[2] The State conversely argued that an inventory search was appropriate once Marcopoulos had been arrested and that the "search incident to arrest" issue was irrelevant.[3]

A one-justice plurality of the court of appeals declined to reach the merits of these claims, instead upholding the search under the automobile exception to the Fourth Amendment warrant requirement.[4] The court held that, pursuant to this exception, Officer Villa had probable cause to search the vehicle due to Marcopoulos's "repeated history of going to a place . . . known for selling narcotics, his uncommonly short time spent at a bar, and his furtive gestures when he noticed a patrol car behind him."[5] In dissent, Justice Keyes reasoned that the facts did not support a probable cause finding because the search was based on "furtive gestures[] alone," without any corroborating evidence.[6]

---

[1] *Marcopoulos v. State*, 492 S.W.3d 773, 775 (Tex. App.—Houston [1st Dist.] 2016, pet. granted).

[2] *Id.* at 777.

[3] State's Appellate Brief at 3–4, *Marcopoulos v. State*, 492 S.W.3d 773 (Tex. App.—Houston [1st Dist.] 2016, pet. granted) (No. 01-15-00317-CR).

[4] *Marcopoulos*, 492 S.W.3d at 777.

[5] *Id.* at 778.

[6] *Id.* at 786–87 (Keyes, J., dissenting).

We granted Marcopoulos's petition for discretionary review solely to address the following question: Did probable cause exist, on these facts, to search Marcopoulos's vehicle under the automobile exception to the warrant requirement?

## II. LAW

Pursuant to the Fourth Amendment, a warrantless search is *per se* unreasonable unless it falls within a warrant exception.[7] The automobile exception allows for the warrantless search of an automobile "if it is readily mobile and there is probable cause to believe that it contains contraband."[8] As the court of appeals noted, there is no question in this case that Marcopoulos's vehicle was readily mobile. "Accordingly, the only . . . inquiry" relevant to this petition "is whether the officers had probable cause to believe the truck contained contraband."[9]

Probable cause exists where the facts and circumstances known to law enforcement officers are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."[10] For probable cause to exist, there must be "a

---

[7] *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

[8] *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009).

[9] *Marcopoulos*, 492 S.W.3d at 778.

[10] *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (some internal quotation marks omitted) (quoting *Carroll v. United States*, 267 U.S. 132, 161–62 (1925)).

'fair probability' of finding inculpatory evidence at the location being searched."[11]    A reviewing court should measure this "probabilit[y]" by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[12]  And it must take into account "the totality of the circumstances" known to the officer, eschewing a "divide-and-conquer" or "piecemeal" approach.[13]

When reviewing a trial judge's ruling on a motion to suppress, we "must view the evidence in the light most favorable to the trial court's ruling."[14]  We will afford "almost total deference" to a trial court's express or implied "determination of historical facts" and review *de novo* "the court's application of the law of search and seizure" to those facts.[15]

### III. ANALYSIS

We have repeatedly held that furtive gestures alone are not a sufficient basis for probable cause.[16]  While "[f]urtive movements are valid indicia of *mens rea*," they must be

---

[11]  *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008).

[12]  *Brinegar*, 338 U.S. at 175.

[13]  *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

[14]  *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

[15]  *See, e.g., Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (internal quotation marks omitted) (quoting *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)).

[16]  *See, e.g., Smith v. State*, 542 S.W.2d 420, 421–22 (Tex. Crim. App. 1976); *Beck v. State*, 547 S.W.2d 266, 268–69 (Tex. Crim. App. 1976); *Wilson v. State*, 511 S.W.2d 531, 534–35 (Tex. Crim. App. 1974).

"coupled with reliable information or other suspicious circumstances relating the suspect to the evidence of crime" to constitute probable cause.[17] Consequently, the focus of our analysis is whether Marcopoulos's furtive gestures, when considered alongside his brief appearance at a known narcotics establishment, give rise to probable cause. For the following reasons, we conclude that they do not.

A good starting point for this discussion is *Sibron v. New York*, a United States Supreme Court case which explored reasonable searches in the drug context.[18] In *Sibron*, a police officer surveilled the defendant for eight hours, observing conversations between him and several other people—all of whom the officer knew to be narcotics addicts.[19] The officer did not overhear the contents of these conversations; observe any transactions; or see, smell, or otherwise detect the presence of drugs.[20] The uniformed officer eventually approached Sibron, said, "You know what I'm after," and reached into Sibron's pocket, confiscating several envelopes of heroin.[21]

The court ruled the search unreasonable because, *inter alia*, Sibron's observed behavior

---

[17] *Smith*, 542 S.W.2d at 421–22.

[18] *See generally* 392 U.S. 40 (1968).

[19] *Id.* at 45.

[20] *Id.*

[21] *Id.*

did not give rise to probable cause to conduct an arrest for a drug offense.[22] The court emphasized that, although Sibron had affiliated with known addicts, "[t]he inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security."[23] The court opined that probable cause required something more—perhaps knowledge of the contents of Sibron's conversations or the observation of a transaction.[24] When the officer approached Sibron, however, "[n]othing resembling probable cause existed."[25]

We recognize that *Sibron* involved probable cause to arrest, rather than probable cause to conduct a search.[26] *Sibron* also did not implicate the automobile exception; at the time he was searched, Sibron was standing just outside of a restaurant.[27] Nevertheless, the fact that Marcopoulos was searched in connection with, rather than outright arrested for, a drug offense does not lessen the requirements of probable cause.[28] The same goes for the fact that his

---

[22] *See id.* at 62–63.

[23] *Sibron*, 392 U.S. at 62.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 62–63.

[27] *Id.*

[28] *See, e.g., Brown v. State*, 481 S.W.2d 106, 109–110 (Tex. Crim. App. 1972) ("[P]robable cause to arrest, probable cause to search, and probable cause to investigate . . . are not mutually exclusive. For example, the facts supplying probable cause to arrest might

vehicle, rather than his person, was searched, as the automobile exception neither reduces nor eliminates the probable cause standard.[29]

We interpret *Sibron* to severely limit the probative value of Marcopoulos's presence at Diddy's. As in *Sibron*, the officer in this case was not privy to Marcopoulos's business within the bar. Though Officer Oliver knew Diddy's to be a hotbed of narcotics activity, this activity was never even remotely linked to Marcopoulos. Oliver did not witness Marcopoulos initiate a transaction; engage anyone in the pursuit of drugs; or possess any containers, cash, or other paraphernalia which would suggest that he intended to buy or had recently bought contraband. Oliver testified that officers had "seen [Marcopoulos] at the location before," and the parties spend much of their briefing arguing whether the trial court could reasonably infer from this testimony that Marcopoulos had "been there multiple times,"[30] or only "one prior occasion."[31] But even assuming Marcopoulos had been seen at Diddy's "multiple times," this hardly leads to the conclusion that, as suggested by the State, Oliver knew Marcopoulos to be

---

also furnish probable cause to search.").

[29] *See, e.g.*, *Nastu v. State*, 589 S.W.2d 434, 438 (Tex. Crim. App. 1979) ("[T]he expectation of privacy, and hence the protection afforded . . . is lower in automobiles than it is in houses or offices. But automobiles are still protected by the Fourth Amendment and there must be probable cause to search[.]"); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 461 (1971) ("The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears.").

[30] State's Reply to Appellant's Brief on the Merits at 11 n.1.

[31] Appellant's Merits Brief at 16–17.

a repeat narcotics customer.[32]

While we do not discount the suspiciousness of Marcopoulos's unusually brief appearance within the bar, this behavior does not "warrant a man of reasonable caution in the belief that an offense has been or is being committed."[33] There remains, then, a discernible gap between the reasonable suspicion aroused by Marcopoulos's brief presence at Diddy's and the proof necessary to establish probable cause.[34] We also hold, for the following reasons and by the slightest of margins, that this gap was not bridged by Marcopoulos's furtive gestures.

We have repeatedly held that furtive gestures must be coupled with "reliable information or other suspicious circumstances relating the suspect to the evidence of crime" to establish probable cause.[35] Determining the nature of "reliable information" or "other suspicious circumstances" is a fact-driven inquiry that does not lend itself to bright-line rules.[36] We look to prior, analogous cases for guidance.

---

[32] *See* State's Reply to Appellant's Brief on the Merits at 11 & n.1.

[33] *Brinegar*, 338 U.S. at 175–76.

[34] *See Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011) ("A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest. For this reason, a warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information[.]").

[35] *See, e.g.*, *Smith*, 542 S.W.2d at 421–22.

[36] *Id.*; *see also McGee*, 105 S.W.3d at 616 ("Each [probable cause] analysis will turn on the particular facts and circumstances of the underlying case. No one factor is

We have held twice before that furtive gestures, coupled with some concrete indicator of drug activity, may establish probable cause.[37] In *Wiede v. State*, we held that a police officer had probable cause to search a vehicle for drugs when the driver was observed reaching over, removing a plastic bag from his pocket, and placing it in the console area.[38] Our holding was based squarely on the sighting of a plastic bag, as we reasoned that the officer's training and experience indicated to him that "drugs are commonly packaged, carried, or transported in plastic bags."[39] Similarly, we held in *Turner v. State* that a police officer had probable cause to search a vehicle for drugs when the driver conspicuously dropped a matchbox to the floor as he exited the vehicle.[40] We concluded that the presence of the matchbox, and the driver's attempt to hide it, established probable cause as those facts "could warrant a man of reasonable caution in believing that the box contained contraband that appellant wanted to conceal from the officers."[41]

We have conversely held that furtive gestures, absent some concrete evidence of drug activity and informed only by an officer's "vague suspicion," do not give rise to probable

___

determinative.").

[37] *See Wiede v. State*, 214 S.W.3d 17, 27–28 (Tex. Crim. App. 2007); *Turner v. State*, 550 S.W.2d 686, 688 (Tex. Crim. App. 1977).

[38] *Wiede*, 214 S.W.3d at 20–21, 28.

[39] *Id.* at 27.

[40] *Turner*, 550 S.W.2d at 688.

[41] *Id.*

cause.[42]  In *Brown v. State*, a uniformed police officer in an unmarked car followed a vehicle thought to be occupied by armed-robbery suspects.[43]  The officer "observed the two men in the back seat . . . turn and look toward him," then saw "their shoulders move and concluded that they were concealing firearms in the back seat."[44]  The officer searched the vehicle and discovered marijuana, but this Court found the search unreasonable:

> To find the appellants' conduct in the instant case sufficient to constitute probable cause . . . would be to assume: (1) that they recognized [the officer]'s unmarked car as a police car; (2) that these gestures were in response to that awareness; and (3) that they were purposely made to avoid apprehension.[45]

Finding this "chain of inferences" to be "too tenuous," we concluded that the "fact that the officer observed [the appellants'] shoulders moving is an insufficient basis for inferring that they were concealing firearms," despite the suspicious circumstances under which their conduct occurred.[46]

We gather several important conclusions from these cases.  First, the legal significance of furtive gestures, like any other component of probable cause, is fact-dependent.  Second, and perhaps more importantly, furtive gestures must be supported by evidence that directly,

---

[42]  *See Brown*, 481 S.W.2d at 111.

[43]  *Id.* at 108–09.

[44]  *Id.* at 108.

[45]  *Id.* at 112.

[46] *Id.*

not just "vague[ly]," connects the suspect to criminal activity.[47]

As discussed above, Marcopoulos's short visit to Diddy's, unsupported by any details concerning the nature of his visit there, did not sufficiently "relat[e]" him to any "evidence of crime."[48] Furthermore, as in *Brown*, Marcopoulos did not exhibit furtive gestures in response to police action (*e.g.*, wailing sirens or flashing lights), but rather mere police presence. He was situated in front of a marked police car that had not yet indicated an intention to stop him, and beside an unmarked police car driven by an undercover officer. Finally, Marcopoulos's movements, unlike those in *Wiede* or *Turner*, were not connected to a known or suspected instrumentality of crime—*e.g.*, a baggie or matchbox. Under these circumstances, Officer Oliver's notions about Marcopoulos, though certainly providing reasonable suspicion justifying a temporary investigative detention,[49] did not rise to the level of probable cause justifying a full-blown search. Although Oliver's suspicion was ultimately

---

[47] *E.g., Brown*, 481 S.W.2d at 111; *see also Wiede*, 214 S.W.3d at 27; *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (stating that probable cause must "point like a beacon" to a particular person or location); *Faulk v. State*, 574 S.W.2d 764, 766–67 (Tex. Crim. App. 1979); *Turner*, 550 S.W.2d at 688.

[48] *Smith*, 542 S.W.2d at 421–22.

[49] *See Derichsweiler*, 348 S.W.3d at 917 (Tex. Crim. App. 2011) (emphasis in original) ("It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing."); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968) ("Thus, it is argued, the police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity. . . . If the 'stop' and the 'frisk' give rise to probable cause to believe that the suspect has committed a crime, then the police should be empowered to make a formal 'arrest,' and a full incident 'search' of the person.").

vindicated, "a search cannot be justified by what it uncovers."[50]

We reiterate that, although we have discussed the facts of this case sequentially, we have analyzed them holistically.[51]  While considering the totality of the circumstances makes this a closer call than it might otherwise have been, we conclude that the automobile exception cannot be stretched so far as to justify an all-out warrantless search on these facts.[52]

## IV. CONCLUSION

We wish to stress three aspects of our decision today.  First, as with any probable cause determination, it is fact-driven.  We do not hold that observations akin to Officer Oliver's will never meet the standard of probable cause; we simply conclude that Marcopoulos's observed behavior was insufficient in this case.  Second, it was only barely insufficient.  We do not hesitate to say that, had Oliver observed any additional indicators of drug activity, either at Diddy's or within Marcopoulos's car, the scale would tip in favor of a finding of probable cause.  Finally, although probable cause to search the vehicle was lacking on these particular

---

[50]  *Brown*, 481 S.W.2d at 112.

[51]  *See supra* Part II; *Wiede*, 214 S.W.3d at 25 ("When determining probable cause, an appellate court considers the totality of the circumstances.  This means that a 'divide-and-conquer' or piecemeal approach is prohibited.").

[52]  *See, e.g.*, *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973) (discussing *Carroll v. United States*, 267 U.S. 132 (1925)) ("Automobile or no automobile, there must be probable cause for the search."); *Chambers v. Maroney*, 399 U.S. 42, 51 (1970) ("In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution."); *see also United States v. Ervin*, 907 F.2d 1534 (5th Cir. 1990) (citing *California v. Carney*, 471 U.S. 386, 393 (1985)) ("[T]he automobile exception is applicable only if 'the overriding standard of probable cause is met.'").

facts, we do not conclude that the Fourth Amendment was necessarily violated—we decide only that the automobile exception is unavailing. Nevertheless, the trial court's ruling must be upheld on any valid theory applicable to the case.[53] Accordingly, we reverse the judgment of the court appeals and remand the cause for that court to render an opinion addressing the remaining contentions of the parties.[54]

Delivered: December 20, 2017

Publish

---

[53] *E.g.*, *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

[54] *Marcopoulos*, 492 S.W.3d at 777 ("Appellant's four issues challenge . . . whether the search of his truck fit within the inventory-search exception to obtaining a search warrant.").