COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JESUS MANUEL ORTIZ, | § | |
| | | No. 08-15-00078-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20120D04563) |
| | § | |

## **O P I N I O N**

Jesus Ortiz appeals his conviction for possession of a controlled substance with intent to deliver. In four issues, Appellant contends: (1) the trial court should have granted his motion to suppress evidence because his detention for speeding was unnecessarily prolonged without any reasonable suspicion; (2) a drug dog alert did not provide sufficient probable cause to believe his vehicle contained contraband; (3) the trial court abused its discretion in denying his motion to disclose the identity of the confidential informant because the informant knew where the drugs were hidden; and (4) the trial court abused its discretion in refusing to disclose the identity of the informant because the informant was unreliable. We affirm.

## **BACKGROUND**

On September 20, 2012, El Paso Sheriff's Narcotics Task Force detectives called Deputy

Moises Gutierrez, a member of the Metro Narcotics Task Force, requesting him to look out for a vehicle suspected to be involved in a narcotics transaction. Later that morning, Deputy Gutierrez observed a vehicle matching the description given by the detectives going 50 miles per hour in a 30-mile-per-hour zone. The deputy initiated a traffic stop. Appellant was the sole occupant of the vehicle. Deputy Gutierrez asked Appellant for his driver's license and proof of insurance, but Appellant could only provide a Texas identification card along with his insurance card. When asked who owned the vehicle, Appellant responded that he did not know. Deputy Gutierrez then asked him where he had gotten the vehicle and Appellant responded evasively; only after asking him four times did Appellant state he had picked up the vehicle in a parking lot.

The deputy ran a warrants and background check on Appellant. He found Appellant had been arrested in 2009, the vehicle registration was fictitious, but he did not find any active warrants. By this time, about eighteen minutes had elapsed since Deputy Gutierrez had pulled Appellant over for speeding. While he was running the warrants and criminal history search, Deputy Omar Montoya arrived to assist Gutierrez with the stop. Still unable to determine ownership of the vehicle from Appellant's answers or from the computer system, Deputy Gutierrez asked Appellant for consent to search the vehicle. When Appellant refused to consent, Deputy Gutierrez retrieved his K-9, Jerry, from his vehicle and ran him around Appellant's vehicle. Within a minute, the dog alerted to the presence of contraband near the front driver's-side wheel of the vehicle. Deputy Gutierrez then began a search of the vehicle.

While this initial search was taking place, Deputy Montoya was questioning Ortiz about the vehicle. Appellant initially told the deputy he had driven the vehicle across the border from Juarez, Mexico, because it belonged to a friend living over there and Appellant was trying to help

2

him sell it. He then changed his story and told Deputy Montoya he had just picked up the vehicle from a parking lot in El Paso, Texas.

Deputy Gutierrez then asked Deputy Montoya for his assistance in searching through the front and rear passenger compartments and trunk of the vehicle. The deputies proceeded to search the vehicle but were unable to locate any contraband. Deputy Gutierrez determined an x-ray of the vehicle would be needed to confirm or dispel his dog's alert to contraband, and so advised Appellant he was under investigative detention, administered *Miranda* warnings to him, and requested the assistance of a detective. The detective arrived a few minutes later and Deputy Gutierrez drove Appellant's vehicle to the Bridge of the Americas, where Customs and Border Protection agents would be able to conduct an x-ray of the vehicle.

Once at the bridge, border agents x-rayed the vehicle and located anomalies in the engine-block area, near the area where the dog had alerted. After completing the x-ray, Deputy Montoya transported Appellant to an interview room at the El Paso County Detention Facility, while Deputy Gutierrez escorted Appellant's vehicle to the Sheriff's motor pool for a more extensive search of the vehicle. Officer Gutierrez ran his drug dog around the vehicle and the dog again alerted on the same location near the front left tire. But after another search deputies still could not locate any contraband. Then, a seasoned mechanic working with the deputies noticed the vehicle's brake booster was aftermarket and dismantled the booster. Hidden in the booster, the deputies discovered slightly over two kilograms of methamphetamine. Appellant was placed under arrest.

Appellant was indicted for possession with intent to deliver a controlled substance. He filed a pretrial motion to suppress, alleging officers lacked probable cause both to arrest him and to search his vehicle. At the hearing, Appellant argued the detention was unreasonably prolonged

3

and the drug dog's alert did not give deputies probable cause to search his vehicle. The trial court stated it was not ready to rule at that time, but stated its belief that the stop and the questions asked during the stop were appropriate. Appellant also filed a motion to disclose the identity of the confidential informant, arguing the informant could have been the one who had placed the drugs in the vehicle. Appellant subsequently agreed to a plea deal before the trial court issued a written order on either motion, but the trial court entered a *nunc pro tunc* order indicating it had denied the motion to suppress and motion to disclose prior to the guilty plea. This appeal followed.

## DISCUSSION

### Reasonable Suspicion

In his first issue, Appellant contends the traffic stop was prolonged beyond its reasonable investigatory purpose without reasonable suspicion of additional criminal wrongdoing in violation of his Fourth Amendment rights. He contends the drug-detection dog was not deployed until after all matters properly associated with the initial traffic stop were concluded, which the Supreme Court concluded in *Rodriguez v. U.S.* violates the Fourth Amendment prohibition of unreasonable searches and seizures.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex.Crim.App. 2018). In its determination of historical facts, we afford almost total deference to the trial court. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex.Crim.App. 2017). We review *de novo* whether those facts are sufficient to give rise to reasonable suspicion. *Lerma*, 543 S.W.3d at 190. When, as here, the trial court does not enter findings of fact, we must view the evidence in the light most favorable to the ruling and

4

assume the trial court made implicit findings of fact supporting the ruling, provided those findings are supported by the record.   *Id*., at 190; *Ramirez-Tamayo*, 537 S.W.3d at 35-36.

*Analysis*

In *Rodriguez v. U.S.*, the Supreme Court held a traffic stop could not be extended beyond the time needed to handle the matter for which the stop was made.   *Rodriguez v. U.S.*, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015).   There, the defendant was pulled over by police for driving on the shoulder—a traffic violation in the state of Nebraska.   *Id*.   After issuing a written warning and returning all documents to the driver, the officer asked for permission to walk his dog around the vehicle.   *Id*., at 1613.   When the driver refused, the officer told him to turn off the ignition and exit the vehicle.   *Id*.   The officer waited for backup and then, once backup arrived, walked the dog around the vehicle.   *Id*.   The dog alerted to the presence of drugs and the officer found a large bag of methamphetamine after a search of the vehicle.   *Id*.   The district court adopted a finding that the detention for the dog sniff was not independently supported by individualized suspicion, but concluded that the extension of the stop was permissible because it was only a *de minimis* intrusion.   *Id*., at 1613-14.   The Supreme Court, however, in holding the extended detention violated the Fourth Amendment, stated the critical inquiry is not whether the sniff occurs before or after the issuance of the ticket but whether conducting the sniff prolongs the stop beyond the time necessary to address the traffic violation that warranted the stop.   *Id*., at 1616.

But a traffic stop may be prolonged beyond the time necessary to conduct the stop if the officer develops reasonable suspicion of criminal activity apart from the traffic violation. *Ramirez-Tamayo*, 537 S.W.3d at 36 (citing *Rodriguez*, 135 S.Ct. at 1616).   "Reasonable suspicion to detain a person exists when a police officer has 'specific, articulable facts that, when combined

5

with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.'" *Furr v. State*, 499 S.W.3d 872, 878 (Tex.Crim.App. 2016)(quoting *Wade v. State*, 422 S.W.3d 661, 668 (Tex.Crim.App. 2013)). Further, the officer's subjective intent in prolonging the stop is irrelevant: the proper inquiry is whether there was an objectively justifiable basis for the detention. *Wade*, 422 S.W.3d at 668. Reasonable suspicion is not a carte blanche for prolonged detention and investigation, and an officer must confirm or dispel his suspicions quickly, but the investigatory detention may continue for a reasonable period of time until the officers have confirmed or dispelled their original suspicion of criminal activity. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex.Crim.App. 2014).

In assessing whether the officer had reasonable suspicion to prolong a stop, a reviewing court looks to the totality of the circumstances to see whether the officer had a particularized and objective basis for suspecting wrongdoing. *Ramirez-Tamayo*, 537 S.W.3d at 36. While an inarticulate hunch or intuition is not sufficient, reasonable suspicion is supported where the information is sufficiently detailed so as to suggest something of a criminal nature is happening. *Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex.Crim.App. 2011). To find that reasonable suspicion exists, the reviewing court does not need to rule out the possibility of innocent conduct; our focus is on the degree of suspicion that attaches to particular non-criminal acts. *Ramirez-Tamayo*, 537 S.W.3d at 36.

Viewing the facts here in the light most favorable to the ruling, as we are required to do, Deputy Gutierrez pulled Appellant over for going 50 miles per hour in a 30-mile-per-hour zone. He then asked Appellant for his driver's license and proof of insurance. Appellant did not have a driver's license and instead produced a Texas identification card. In response to a question by

6

Deputy Gutierrez, Appellant stated he did not own the vehicle and could not say who did. Deputy Gutierrez then ran a background check on Appellant and discovered he been arrested within the past three years. He also ran the vehicle registration and the system showed it was illegitimate. Under the totality of the circumstances presented, Deputy Gutierrez had a particularized and objective basis for suspecting additional criminal wrongdoing beyond the initial traffic violation, thus allowing him to prolong the traffic stop for additional investigation. *See Hamal v. State*, 390 S.W.3d 302, 308 (Tex.Crim.App. 2012)(facts were sufficient for reasonable suspicion where appellant had been speeding late at night, acted nervously around the officer, had a prior criminal record and recent arrests for drug offenses, and responded "no" when asked if she had been in trouble with law enforcement before). While Deputy Montoya continued to question Appellant about where he had gotten the vehicle, Deputy Gutierrez ran his dog around the vehicle and the dog alerted to the presence of contraband. Unlike the appellant in *Rodriguez*, Officer Gutierrez developed reasonable suspicion of criminal activity beyond the speeding violation, and the dog sniff was conducted during his investigation of this additional criminal activity. Because the dog sniff was conducted during this additional investigation, the prolonged stop did not run afoul of *Rodriguez*. *Ramirez-Tamayo*, 537 S.W.3d at 36. Accordingly, Appellant's first issue is overruled.

## Probable Cause and the Automobile Exception

In his second issue, Appellant argues the search and seizure of his vehicle was made without sufficient probable cause to believe it contained contraband or other evidence of a crime. Alternatively, he argues that even if the dog sniff did provide the deputies with probable cause to search the vehicle, they did not have continuing probable cause to conduct the extended search

they actually conducted before locating the methamphetamine.

### *Standard of Review*

As noted above, we review a trial court's ruling on a motion to suppress under a bifurcated standard of review, viewing the facts in the light most favorable to the trial court's ruling and reviewing *de novo* the court's application of the law to those facts. *Lerma*, 543 S.W.3d at 190. *Ramirez-Tamayo*, 537 S.W.3d at 35-36.

### *Analysis*

The automobile exception allows law enforcement to conduct a warrantless search of a vehicle if the vehicle is readily mobile and there is probable cause to believe it contains contraband or other evidence of a crime. *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex.Crim.App. 2017). "Probable cause exists where the facts and circumstances known to law enforcement officers are 'sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.*, at 599-600 (quoting *Brinegar v. U.S.*, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). Probable cause is more than a "reasonable suspicion," but less than a preponderance of the evidence. *State v. Ford*, 537 S.W.3d 19, 23-24 (Tex.Crim.App. 2017). Generally, a positive alert by a certified drug dog is enough, standing alone, to give officers probable cause to search a vehicle. *State v. Weaver*, 349 S.W.3d 521, 527-528 (Tex.Crim.App. 2011); *Chung v. State*, 475 S.W.3d 378, 386 (Tex.App.--Waco 2014, pet. ref'd). The automobile exception is not contingent upon the existence of exigent circumstances. *Neal v. State*, 256 S.W.3d 264, 283 (Tex.Crim.App. 2008).

Because there is no dispute Appellant's car was readily mobile, the proper inquiry here is whether the deputies had probable cause to believe his vehicle contained contraband. While

8

Appellant was being questioned by Deputy Montoya on who actually owned the vehicle, Deputy Gutierrez ran Jerry, a dog certified in the detection of narcotics, around the exterior of the vehicle. In less than a minute, Jerry alerted to the area corresponding to the front driver's side wheel area of the vehicle. At this point, deputies had probable cause to believe the vehicle contained contraband and thus could conduct a warrantless search. *Matthews*, 431 S.W.3d at 603-04 ("If the dog alerts, the presence of drugs is confirmed, and police may make a warrantless search."). Accordingly, Appellant's contention the deputies lacked sufficient probable cause to search his vehicle is without merit.

As to Appellant's alternative contention—that even if the deputies had probable cause to search his vehicle, the probable cause should have been dispelled after the initial search—he has cited no authority to support this proposition, and we have found none. After the initial search by deputies, the vehicle was then x-rayed by border patrol agents who confirmed an anomaly in the area near where Jerry had alerted, further contributing to the deputies belief Appellant's vehicle contained contraband. *Mathews*, 431 S.W.3d at 605-06. Officer Gutierrez again ran Jerry around the vehicle and he alerted on the same location near the front left tire. Based on the facts in the record, which we view in the light most favorable to the ruling, the totality of the circumstances known to the deputies were sufficient in themselves to lead a person of reasonable caution to believe contraband would be found. *Marcopoulos*, 538 S.W.3d at 599-600. Thus, Appellant's second issue is overruled.

**Confidential Informants and Information Material to the Defense**

In his third issue, Appellant contends there was a reasonable probability that the confidential informant could provide testimony necessary to his defense. He asserts it is clear

9

that he was not the one who concealed the methamphetamine in the car, and so the informer could have been the one to have done so or, alternatively, would know who did. Because this information would be critical to Appellant's defense, he posits the trial court abused its discretion in denying his motion to disclose the identity of the confidential informer.

*Standard of Review*

We review a trial court's ruling on a motion to disclose the identity of a confidential informant for abuse of discretion. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex.Crim.App. [Panel Op.] 1980); *Thomas v. State*, 417 S.W.3d 89, 91-92 (Tex.App.--Amarillo 2013, no pet.). The ruling must be affirmed unless it is so clearly wrong as to lie outside the zone of reasonable disagreement. *Thomas*, 417 S.W.3d at 92.

*Analysis*

Under Texas Rules of Evidence 508, the State has a privilege to refuse to disclose a person's identity when the person has furnished information to a law enforcement officer and the information relates to or assists in the investigation of a possible violation of law. TEX.R.EVID. 508(a). The privilege is not absolute, however, and if the court finds a reasonable probability exists that the informer can give testimony necessary to a fair determination of guilt or innocence, the privilege does not apply. TEX.R.EVID. 508(c). "The informer's potential testimony must significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient." *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App. 1991). The defendant has the threshold burden of demonstrating that the informer's identity must be disclosed, and must provide supporting evidence. *Id.*; *Patterson v. State*, 138 S.W.3d 643, 649 (Tex.App.--Dallas 2004, no pet.). But since the defendant may not actually know the nature of the informer's

10

testimony, he is only required to make a plausible showing of how the informer's information may be important. *Bodin*, 807 S.W.2d at 318; *Southwell v. State*, 80 S.W.3d 647, 649-650 (Tex.App.--Houston [1st Dist.] 2002, no pet.). Once the defendant has made a plausible showing, the court should conduct an in camera hearing to determine whether there is a reasonable probability the informant could provide testimony necessary to a fair determination of guilt or innocence. TEX.R.EVID. 508(c)(2); *Southwell*, 80 S.W.3d at 650. When it is shown that an informant was an eyewitness to an offense, that informant can in fact give testimony necessary to the fair determination of guilt or innocence. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App. 1991).

During the hearing on the motion to disclose, Appellant called Deputy Gutierrez to the stand who testified a Detective Guzman had informed him that a particular vehicle would be loaded with narcotics in the area, and it was based on this information that Deputy Gutierrez surveyed the area for the described vehicle in order to discover a traffic infraction that would enable him to pull it over. Appellant then called Detective Guzman, who testified that a confidential informant had provided his office with the information regarding the vehicle. During further questioning, Appellant attempted to ascertain if the informer had been working for the detective or if the informer had affixed the license plates to the vehicle. The State objected on both occasions, arguing Appellant was attempting to obtain the identity of the confidential informant without making his preliminary showing. The trial court sustained both objections, and believing the hearing could not proceed without revealing the identity of the informer, relieved Appellant of his initial burden, and held an in camera hearing with Detective Guzman to determine whether the informer's involvement in the case was material. The court did not enter a written order granting or denying Appellant's motion to disclose the identity of the informer, but after his guilty plea the

11

court entered a *nunc pro tunc* order indicating the motion had been denied prior to his guilty plea.

Appellant asserts the informer could have been the one who planted the methamphetamine in the vehicle or, alternatively, would know who had. To support his contention, he argues the testimony of Detective Guzman shows the Narcotics Task Force was aware the vehicle was being used to transport methamphetamine, but was unaware the Appellant would be driving and did not know who had control of the vehicle before Appellant. This raises a question, he asserts, as to whether it was the confidential informant who placed the methamphetamine in the vehicle, or whether he may have witnessed other persons concealing the drugs. However, as noted above, this type of mere conjecture and speculation about possible relevancy is insufficient. *Bodin*, 807 S.W.2d at 318; *Patterson*, 138 S.W.3d at 649 ("The argument that the informant could have identified other occupants who 'could have been responsible for the contraband' was nothing more than mere conjecture or supposition unsupported by any evidence."). Further, we have unsealed and reviewed the record from the in camera hearing and our review indicates the informant was not an eyewitness to the event. Accordingly, the trial court did not abuse its discretion in ruling the informant's identity did not need to be disclosed by the State. *Southwell*, 80 S.W.3d at 650. Appellant's third issue is overruled.

**Information Relied Upon to Establish the Legality of Obtaining Evidence**

*Analysis*

In his final issue on appeal, Appellant argues the confidential informant's information was not reasonably believed to be reliable or credible, and that the deputies relied on his information to establish the legality of the search. Appellant contends—in a single sentence— that because the Narcotics Task Force did not utilize the informer's information to obtain a search warrant, his

12

lack of credibility meant his tip could not be relied upon to initially detain Appellant.

While Texas Rules of Evidence 508(c)(3)(A) does provide a court with the authority to order a public entity to disclose an informer's identity if (1) his information is relied on to establish the legality of the means by which the evidence was obtained, and (2) the court is not satisfied the informer was reasonably believed to be reliable or credible, the rule is inapplicable here. TEX.R.EVID. 508(c)(3)(A). As discussed above, the legality of the search in this case was established by the automobile exception, not by the informer's tip, as Appellant himself conceded by asserting that the informer's information was not used to obtain a search warrant. Accordingly, Appellant's fourth issue is overruled.

## CONCLUSION

Having overruled issues one through four, the judgment of the trial court is affirmed.

June 27, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., Not Participating

(Do Not Publish)

13