

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-18-00802-CR & 04-18-00803-CR

Kenton Lance **LIGHT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court Nos. 6330 & 6328
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 6, 2019

AFFIRMED

After Kenton Lance Light's pretrial motion to suppress was denied, he was convicted by a jury of possession of the controlled substance lorazepam and possession with intent to deliver methamphetamine. Light appeals the trial court's judgments asserting the trial court erred in denying his motion to suppress. We affirm the trial court's judgments.

## BACKGROUND

At the hearing on Light's motion to suppress, three officers testified: (1) Deputy Chad Loth; (2) Sergeant Nick Moellering; and (3) Deputy Wayne Hudson.

Deputy Loth testified he was traveling eastbound on a highway around 1:00 a.m. when he observed a westbound pickup truck which appeared to be missing a front passenger tire causing sparks to fly from the front end as it was being driven down the highway. Deputy Loth turned around and stopped the truck to check the welfare of the occupants because the vehicle appeared to have been in an accident. When Deputy Loth exited his patrol vehicle, he confirmed the truck was missing the front passenger wheel and also observed damage to the passenger side of the truck. Light was driving the truck, and Phillip Gressett, later identified as the truck's owner, was in the front passenger seat. As soon as the truck stopped, Light quickly exited the truck and told Deputy Loth he believed he had hit a guardrail. Deputy Loth testified there were intermittent storms that night with heavy rain, so hydroplaning was a plausible explanation. Gressett also exited the truck through the driver's side door because the front passenger door would not open. Light did not have his driver's license, so Deputy Loth asked dispatch to run a check on the status of his driver's license. Deputy Loth stated he knew Light from prior encounters with him. Dispatch informed Deputy Loth that Light had three active suspensions. As a result, Deputy Loth testified Light could not legally drive. Deputy Loth testified the suspended license gave him probable cause to arrest Light, but he did not arrest him at that time.

As Deputy Loth was talking to Light and Gressett, another vehicle pulled up, and the passenger in that vehicle told Deputy Loth that his vehicle was struck by the truck Light was driving and was disabled approximately a half of a mile down the highway. The passenger further informed Deputy Loth that the wheel of the truck Light was driving was in the middle of the highway at the location of the accident. Deputy Loth instructed the driver to park on the side of the road, and the two men remained at the scene. Deputy Loth sent Deputy Billy Hull back to the scene of the accident to check the condition of the highway and ensure the wheel was not blocking it. Deputy Loth believed Light struck the other vehicle and failed to stop at the scene of the

accident. Around that time, Sergeant Moellering arrived. As Sergeant Moellering was assessing the damage to the truck, he noticed a gold-colored metal tin and black hide-a-key box laying on the ground less than a few feet from where the front tire should have been. Although there had been intermittent storms with heavy rain that night, both the hide-a-key box and the metal tin were relatively dry and did not have any grass or mud on them. Neither Light nor Gressett claimed ownership of the hide-a-key box which contained a small baggy of methamphetamine. Light stated the metal tin contained his medicine, and he believed the metal tin must have fallen out of the passenger side of the vehicle. In later observing the dash cam recording of the stop, Deputy Loth noticed the front passenger door was never opened; however, during the stop, Deputy Loth testified Light can be seen walking around to the front passenger side, removing something from his pocket, and trying to kick the object underneath the truck. Based on the contents of the hide-a-key box and metal tin, Sergeant Moellering and Deputy Hudson searched the truck. Some glass pipes, small baggies, and a large amount of methamphetamine was found. In response to Sergeant Moellering's question about who owned the methamphetamine, Light admitted the methamphetamine was his. Light and Gressett were then placed under arrest. After the arrests, the truck was inventoried and towed. Deputy Loth testified he intended to impound and tow the truck after the initial stop based on the absence of the front wheel.

Sergeant Nick Moellering testified he went to assist Deputy Loth with traffic control and conducting the crash investigation due to the heavy storms in the area. When Sergeant Moellering arrived at the scene, he observed Deputy Loth speaking with Light and Gressett and also observed the front passenger wheel was off the vehicle. As he was assessing the damage to the truck, he observed a hide-a-key box and gold metal tin on the ground within a foot of where the front tire should have been. Sergeant Moellering opened the gold metal tin and saw that it contained pills. He then asked Gressett and Light if they recognized the tin, and Light said it belonged to him. In

response to Sergeant Moellering's question about whether Light had a prescription for the lorazepam contained in the metal tin, Light admitted he did not have a prescription for it. Sergeant Moellering stated the absence of a prescription for the lorazepam gave him probable cause to arrest Light, but he was not arrested at that time. Both Gressett and Light denied any knowledge about the hide-a-key box. Sergeant Moellering testified he asked Gressett and Light about both items because they were dry even though it had been raining. The hide-a-key box contained a bag of methamphetamine; however, Light and Gressett were not told about the discovery. After discovering the methamphetamine, Sergeant Moellering and Deputy Hudson began searching the vehicle. Sergeant Moellering testified he recovered a Styrofoam cup containing three glass pipes used to smoke methamphetamine and numerous plastic baggies which are commonly used to package controlled substances from the front console cup holder. Deputy Hudson recovered a black bag or pouch in the back passenger seat area that contained six plastic bags of methamphetamine. When they located the black pouch, Sergeant Moellering testified Light began nodding his head. When he asked Light if they found his stash, Light responded it was all his. Sergeant Moellering further testified Gressett stated it was not his. Prior to discovering the methamphetamine in the black bag, neither Light nor Gressett had been placed under arrest, handcuffed, or restricted in their movements. After the methamphetamine was found, both men were placed under arrest.

Sergeant Moellering testified the truck was not completely off the highway but was "[s]till a little bit in it." Photographs taken of the truck at the scene were admitted into evidence which also shows the truck was slightly on the highway. Sergeant Moellering further testified the truck could not legally be driven from the scene because it was missing a wheel and tire. As a result, the truck was towed.

Deputy Wayne Hudson testified he went to assist Deputy Loth. When Deputy Hudson arrived at the scene after observing the second vehicle and the wheel and tire to the truck a half of a mile away, Sergeant Moellering informed him about the methamphetamine found in the hide-a-key box. He then assisted Sergeant Moellering in searching the truck and found a black pouch under the rear passenger seat containing several plastic bags of methamphetamine.

Deputy Loth was recalled as a witness. He testified he did not see either the hide-a-key box or the gold metal tin when he initially went to the passenger side of the truck to observe the damage upon arriving at the scene.

The dash cam video shows that while Deputy Loth was speaking to Gressett and the driver and passenger of the other vehicle, Light entered the back passenger seat of the truck and closed the door. After he exited the truck, he went around the front of the truck to the front passenger side where the gold metal tin and hide-a-key box were recovered. Light then returned to the driver side of the truck.

The trial court denied the motions to suppress, and Light appeals.

## STANDARD OF REVIEW

"When reviewing a trial judge's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling." *Marcopoulos v. State*, 538 S.W.3d 596, 600 (Tex. Crim. App. 2017) (internal quotation omitted). "We will afford almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." *Id.* (internal quotation omitted).

## LORAZEPAM

In his first issue, Light contends the trial court erred in denying his motion to suppress the lorazepam because it was in a closed container that belonged to Light, and the container was searched without a warrant and without obtaining Light's consent.

"When police take possession of property abandoned independent of police misconduct, there is no seizure under the Fourth Amendment." *State v. Martinez*, 570 S.W.3d 278, 286 (Tex. Crim. App. 2019). When "contraband is thrown, dropped or placed away from the person of the accused in a public place, the recovery thereof does not involve a search and the evidence is admissible." *Gomez v. State*, 486 S.W.2d 338, 339 (Tex. Crim. App. 1972); *Haley v. State*, 04-03-00793-CR, 2004 WL 2168632, at *4 (Tex. App.—San Antonio Sept. 29, 2004, no pet.) (mem. op.; not designated for publication). Here, the trial court could have believed Light abandoned the gold metal tin containing the lorazepam based on Light's actions in the dash cam video and the condition and location of the metal tin. Accordingly, the trial court did not abuse its discretion in denying Light's motion as to the lorazepam.

### SEARCH OF TRUCK

In his second issue, Light contends the trial court erred in denying his motion to suppress the methamphetamine recovered during the search of the truck because the officers lacked probable cause to search the truck. Light further contends the automobile exception to the warrant requirement did not apply because the truck was inoperable and the officers made an immediate decision to impound the truck obviating the basis for the automobile exception.

"The automobile exception allows for the warrantless search of an automobile if it is readily mobile and there is probable cause to believe that it contains contraband." *Marcopoulos*, 538 S.W.3d at 599 (internal quotation omitted). "Probable cause exists where the facts and circumstances known to law enforcement officers are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. at 599-600. "For probable cause to exist, there must be "a 'fair probability' of finding inculpatory evidence at the location being searched." *Id*. In determining whether probable cause exists, a reviewing court must consider the totality of the circumstances known to the officer. *Id*.

In the instant case, before searching the truck, the officers had recovered the hide-a-key box by the front passenger side of the truck. Despite the weather conditions, the box was dry, indicating it was recently discarded; however, both Light and Gressett denied ownership of the box. From these circumstances, the officers could reasonably have believed a "fair probability" existed that additional methamphetamine would be located inside the truck. In addition, the trial court could have reasonably found the truck was readily mobile because Light was driving it immediately prior to the traffic stop. *See Medina v. State*, 565 S.W.3d 868, 878 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *Torres v. State*, No. 04-16-00717-CR, 2018 WL 521591, at *2 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (not designated for publication); *see also Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (quoting *California v. Carney*, 471 U.S. 386, 392-93 (1985)) ("'When a vehicle is being used on the highways, . . . the two justifications for the vehicle exception come into play.'"). Therefore, the trial court did not err in denying Light's motion as to the methamphetamine recovered during the search of the truck.

### ADMISSION OF OWNERSHIP

In his third issue, Light contends the trial court erred in denying his motion to suppress his statement that he owned the methamphetamine because he was in custody when the statement was made but was not read his *Miranda* rights.

Statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before he made those statements. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A defendant has the burden to establish he was in custody before the State bears the burden to show compliance with *Miranda*. *Hines v. State*, 383 S.W.3d 615, 621 (Tex. App.—San Antonio 2012, pet. ref'd) (internal quotation omitted).

"A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest."

*Id*. at 621 (internal quotation omitted). The Texas Court of Criminal Appeals has outlined four situations that may constitute custody: "(1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). In the first, second, and third situations, the restrictions upon the suspect's freedom of movement must rise to the degree associated with an arrest as opposed to an investigative detention. *Id*.

Under the fourth situation, an officer's knowledge of probable cause must be manifested to the suspect, and that manifestation could occur "if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Id*.; *Garcia v. State*, 237 S.W.3d 833, 837 (Tex. App.—Amarillo 2007, no pet). "However, the manifestation of probable cause does not automatically establish custody." *Garcia*, 237 S.W.3d at 837. "[T]he question turns on whether, under the facts and circumstances of the case, 'a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave.'" *Ervin v. State*, 333 S.W.3d 187, 205 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (quoting *Nguyen v. State*, 292 S.W.3d 671, 678 (Tex. Crim. App. 2009)). "The 'reasonable person' standard presupposes an *innocent* person." *Dowthitt*, 931 S.W.2d at 254. "[T]he subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect." *Id*.

Here, the dash dam video shows Light freely moving around the truck and the scene of the stop with his movements unrestricted. The video further shows Gressett and the other citizens at the scene similarly moving around unrestricted. Although Light points to the fact that three

uniformed officers were on the scene, Sergeant Moellering and Deputy Hudson testified they initially arrived at the scene to assist with traffic control due to the weather. None of the officers mentioned the methamphetamine discovered in the hide-a-key box, and Light was never informed he was not free to leave. "Because no other circumstances are indicative of custody, we decline to hold that a single incriminating question, directed at multiple individuals who might have had access to the drugs at issue, is sufficient to establish that a reasonable person would perceive the detention to be a restraint on his movement comparable to formal arrest." *Estrada v. State*, No. PD-0106-13, 2014 WL 969221, at *6 (Tex. Crim. App. Mar. 12, 2014) (internal quotation omitted) (not designated for publication). Accordingly, because Light was not in custody when he responded to Sergeant Moellering's question, the trial court did not err in denying his motion to suppress his response to the question.

CONCLUSION

The judgments of the trial court are affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH