

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0546-20

**KEDREEN MARQUE PUGH, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**WALKER, J., filed a concurring opinion in which NEWELL, J., joined.**

### <u>CONCURRING OPINION</u>

I join the Court's opinion in this case holding that the court of appeals erred in concluding that Appellant was reversibly harmed by the admission at trial of his statement to police that he had drugs and a gun in the vehicle he had been driving. I write separately to highlight an additional flaw in the court of appeals's harmless error analysis. The court of appeals relied on a faulty conclusion that Appellant's statement is what led to police discovering the heroin.

## I. Background

Appellant was driving a Chevy Impala registered to his wife when police pulled him over and arrested him on an outstanding arrest warrant for murder. Police handcuffed Appellant, put him in the back of a patrol vehicle, and drove the Impala off the highway access road to a gas station less than 200 feet away to wait for Appellant's wife to come pick it up. While being transported to police headquarters by Officer Johnny Lopez, and without Appellant having been *Mirandized*, the following exchange occurred:

APPELLANT: Officer?

OFFICER LOPEZ: Yes sir?

OFFICER APPELLANT: Hey, I'm gonna be honest, sir. I—I got stuff in the car, man.

OFFICER LOPEZ: What you got in the car?

APPELLANT: I got drugs in the car and I got a small handgun.

Subsequently, police searched the car and discovered heroin and a handgun.

## II. Discussion

Appellant argues that "but for" Officer Lopez's follow-up question about what was in the car, the heroin would not have been discovered and Appellant would not have been charged in this case. The court of the appeals came to the same conclusion, stating that "Pugh's statement to Officer Lopez that he had drugs and a handgun in his wife's car *led to the search of the car*." *Pugh v. State*, No. 04-19-00516-CR, 2020 WL 1866289, at *3 (Tex. App.—San Antonio Apr. 15, 2020) (mem. op., not designated for publication) (emphasis added). Factoring this conclusion into its analysis, the court of appeals went on to hold that Appellant was harmed by the admission of his statement that there were drugs

and a gun in the Impala. *Id.* But in concluding that Appellant's second statement is what led to the heroin being discovered, the court of appeals failed to recognize that once Appellant volunteered that he had "stuff in the car," police had probable cause to search the Impala independent of the subsequent unlawful question by Officer Lopez.

Under the automobile exception, police can conduct a warrantless search of a vehicle "'if it is readily mobile and there is probable cause to believe that it contains contraband.'" *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017) (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009)). Probable cause exists if, under the totality of the circumstances known to the officer at the time, there is "'a 'fair probability' of finding inculpatory evidence at the location being searched.'" *Id.* at 600 (quoting *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008)). "Probability" is measured by "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). A reviewing court's probable cause determination should take into account the training, knowledge, and experience of law enforcement officials. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

Putting aside Officer Lopez's follow-up question and Appellant's response, at the time the Impala was searched police knew the following: Appellant was being arrested on a murder warrant; Appellant was seen getting into the Impala alone prior to his arrest and was the sole occupant of the vehicle when he was pulled over and arrested; and Appellant wanted to be "honest" with police and let them know he had "stuff in the car." It does not take a legal technician to understand that Appellant was conveying that he had illegal items in the vehicle when he volunteered that he had "stuff in the car." And certainly, a police

officer, given his training, knowledge, and experience, could reasonably deduce that by "stuff" Appellant was referring to contraband of some sort. These facts support the conclusion that police had probable cause to search the Impala *independent of* Officer Lopez's follow-up question and Appellant's response.

According to the court of appeals, the admission of Appellant's statement was harmful because the heroin would not have been discovered—and therefore, not admitted into evidence—had Officer Lopez not interrogated him about what was in his vehicle. Essentially, the court of appeals applied the exclusionary rule to the discovery of the heroin in assessing harm. *See* TEX. CODE CRIM. PROC. art. 38.23(a). As the Court points out, the court of appeals erred in this regard because, as a general rule, a *Miranda* violation does not bar the admission of physical evidence. *Contreras v. State*, 312 S.W.3d 566, 582-83 (Tex. Crim. App. 2010). But even if the exclusionary rule were at play here, the heroin would still be admissible because the police had a legal justification for searching the Impala and seizing the heroin independent of the illegal questioning.

Under the independent source doctrine, "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Segura v. United Stat*es, 468 U.S. 796, 815 (1984). In the court of appeals's view, "but for" Officer Lopez's illegal question, the heroin would not have been discovered. However, as explained above, police had probable cause to search the Impala once Appellant voluntarily stated that he had "stuff in the car."

I acknowledge that the facts of this case do not lend themselves to a neat application of the independent source doctrine. In most cases where the doctrine is applied, the illegal police conduct at issue occurs *before* police gain authority for a search or seizure from an

independent source.[1] In this case, the police misconduct occurred *after* they had obtained an independent source for the search—Appellant's voluntary statement. But in determining the applicability of the independent source doctrine, we explained that "the central question is 'whether the evidence at issue was obtained by independent legal means.'" *Wehrenberg v. State*, 416 S.W.3d 458, 465 (Tex. Crim. App. 2013) (quoting *United States v. May,* 214 F.3d 900, 906 (7th Cir. 2000)). In *Wehrenberg,* the Court further noted:

> The independent source doctrine is motivated by a recognition that society's interest in deterring unlawful police conduct and its interest in having juries receive all probative evidence "are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (comparing independent source and inevitable discovery doctrines and noting that both doctrines are motivated by same underlying rationale). When the challenged evidence is actually obtained through a source independent of a separate instance of unlawful police conduct, "exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Id.*; *see also Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

*Id.* at 465 n.5.

In this case, the heroin was discovered through "independent legal means" in that Appellant's voluntary statement provided probable cause separate from Officer Lopez's illegal question. This is not an instance where "but for" the police misconduct the evidence would not have been discovered. Further, application of the independent source doctrine to the facts of this case is consistent with the underlying rationale that where evidence is obtained through a source independent and separate from the unlawful police conduct,

---

[1] *See e.g.*, *Segura,* 468 U.S. 796 (applying the doctrine where police entered and secured the petitioner's apartment *prior* to obtaining a valid search warrant based on probable cause based on sources independent of the initial entry); *Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013) (applying the doctrine where police illegally entered the appellant's home *prior* to obtaining a valid search warrant based on sources independent of the illegal initial entry).

police should be put in the same position they would have been had the unlawful police conduct not occurred.

The court of appeals erred when it implicitly applied the exclusionary rule in its harm analysis without considering the applicability of the independent source doctrine to the facts of this case. Given this, along with the other evidence presented to the jury supporting Appellant's conviction, it cannot be said that Appellant was harmed by the admission of his answer to Officer Lopez's custodial question.

### III.    Conclusion

Unfortunately for Appellant, he is the "independent source" in this case. His voluntary statement about having "stuff in the car" provided police with probable cause to search the Impala independent of Officer Lopez's separate, unlawful follow-up question. The court of appeals was mistaken when it concluded that but for Appellant's custodial response about having drugs in the vehicle the heroin would not have been discovered, and it was further mistaken when it factored this inaccurate conclusion into its harm analysis. For these reasons, along with the reasons discussed by the majority, I concur that the court of appeals judgment must be reversed.

FILED: June 9, 2021
PUBLISH