# NO. 12-22-00270-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GABRIEL LAMANDO JOHNSON,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Gabriel Lamando Johnson appeals his conviction for aggravated robbery. In four issues, Appellant challenges the admissibility of his cell site location information (CSLI), the sufficiency of the evidence, and the denial of his suppression and directed verdict motions. We affirm.

## BACKGROUND

One night when Razzoo's Cajun Café manager Jonathan Delapiedra exited the restaurant at around 1:32 a.m., a black man wearing a ski mask approached and forced him back inside at gunpoint. The man took Delapiedra's cell phone and money, forced him to open the safe, tied his hands behind his back, took the money and other items from the safe, and left in a white passenger car. Delapiedra eventually freed himself and alerted the authorities. The next day, Delapiedra used his Google account to determine his cell phone's last known location and provided the coordinates to the police. Tyler Police Detective Keven Fite drove to the location in Flint, which was an alley in a residential neighborhood, and saw a black man at one of the residences with access from the alley loading a large amount of clothing into a white Lexus passenger car. Before backup officers could arrive, the man left in the Lexus. Fite spoke with

Appellant's two children at the residence. They identified the man as Appellant and could not account for his whereabouts on the night of the robbery.

Detective Fite conducted a database search and learned that Appellant was a parolee. From Appellant's parole officer, Fite obtained Appellant's phone number. When Fite contacted Appellant's girlfriend, she provided the same phone number for Appellant. Neither Appellant's girlfriend, with whom he occasionally stayed, nor his mother, with whom he resided, could provide an alibi for him at the time of the robbery. When Fite attempted to call Appellant, a recording stated that the number was changed or disconnected.

Detective Fite requested and obtained a warrant to search Verizon Wireless's records regarding Appellant's phone number, alleging that they contained evidence of the robbery, evidence tending to show a particular person committed the robbery, or implements used in the robbery. Specifically, the warrant authorized a search for the following information:

- **All customer/subscriber information**, including any listed addresses, telephone numbers, social security numbers, dates of birth, names, addresses, any other customer identifying information, mobile handset or device identifiers/serial numbers (MEID, ESN, IMSI, IMEI, MAC IP address), activation date and deactivation date, and location device was purchased if applicable.

- **Device Purchase Information**. This is specifically to include the Date, Time and Location of where the device or any pre-paid refill cards were purchased.

- **Any email addresses associated with the account**. This is to specifically include Google Gmail addresses associated with any Android device associated with this device or any email associated with an iPhone and/or iTunes account associated with this device that is currently on file and stored in the normal course of business of CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS.

- **Call detail records**, including detailed information in reference to all known outgoing and incoming calls associated with the account, dates and times calls were made, and duration of all calls made or received. This is to include any other pertinent call detail records including special features codes, or any other codes that are maintained in the normal course of business for CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS, of any CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS cellular numbers identified in the course of the investigation. In addition to voice call, this would also include any detail records showing text messages, MMS messages, or data activity. In the event the requested Call Detail Records contain other CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS customer numbers, identified as either incoming or outgoing calls, CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS will provide subscriber information to the specific numbers identified.

- **Cell site information**, to include all known cell towers associated with outgoing and incoming calls (Call Detail Records). This information is to include any sector

information, if known, cell site location, and any other related material that would be necessary to identify the location and sector in reference to the cell site information associated with the call detail records. In the event text messages, MMS messages, LTE and Data activity including IP session and destination addresses that were produced are also available with cell site information, the information would be included in this request.

- **Cell Site locations** for all CELLCO PARTENERSHIP, LLP DBA VERIZON WIRELESS Cell Sites, sector information, including Azimuth headings, in the regional market associated with the requested cell site information.

- **Location information**, to include any estimated or known Longitude and Latitude of the cellular device's current location, or approximate location, information received by cell tower(s) in reference to direction and distance from the tower a device may be located (timing and triangulation information). Radio Frequency signal strengths, direction, and transmission information. The geographical constraints of location information will be limited to the United States. Location information can be in the form of historical records. Specific to CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS, this would include any reports of device activity that would include the approximate latitude and longitude of the device at the time of the activity, direction and distance from the tower, and other location related information commonly referred to as an RTT, EVDO, ALULTE, and Levdort report. This further includes any other report similar in nature. For real-time location information this would include the E-911 automated email system, providing emails to the affiant every 15 minutes with the estimated latitude and longitude of the device.

- **All text message and/or MMS messages** currently stored in the normal course of business for CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS, to include any cloud services which allow for the long term storage of both voicemails and SMS/MMS messages.

Fite's supporting affidavit provided the following facts:

Affiant, Detective Keven Fite, is a police officer for the City of Tyler Police Department, and as such is a Peace Officer in and for the State of Texas. Affiant is currently assigned to the Criminal Investigations Division, Major Crimes Unit. Affiant holds a Master Peace Officer Certificate and Special Investigator Certificate issued by the Texas Commission on Law Enforcement. Affiant has over ten years of law enforcement experience and has received training in various criminal law enforcement aspects.

On November 19, 2018, Affiant was notified to respond to an aggravated robbery investigation that occurred during the early morning hours at Razzoo's Cajun Café, located at 7011 S Broadway Ave, Tyler, Smith County, Texas. Tyler Police were called to the restaurant in reference to a commercial panic alarm at approximately 02:28am. Officers arrived and contacted restaurant manager Jonathan Delapiedra. Delapiedra reported that as he was exiting the restaurant around 1:32am, an unknown suspect approached him and exhibited a handgun. Delapiedra was taken back into the restaurant at gunpoint. The suspect told Delapiedra to take him to the money if he wanted to go home tonight. Once in the management office, the suspect took Delapiedra's personal cell phone. He instructed Delapiedra to open the safe where money was removed. The suspect then tied Delapiedra's hands behind his back and left him in the office. Delapiedra was eventually able to cut himself free and contacted police.

3

Delapiedra later provided his wireless cellular account information (AT&T; account number: [account number]; target number: [phone number]). I attempted to call Delapiedra's cellular device. The call went straight to voicemail, indicating that the cellular device may have been turned off.

Razzoo's security camera recordings were reviewed, along with Delapiedra's physical description of the suspect. The suspect is described as a black male, approximate height of 5'10-6'00, approximate weight of 200 lbs., wearing a black puffy/bubble jacket; black pants; black shoes; black gloves; black ski mask.

Affiant and Detectives with the Major Crimes Unit contacted local businesses in the area to review any outside store security video surveillance. Contact was made with Target, located at 7003 S Broadway Ave. Security video recordings were provided of the outside parking lot area, which captured the south end of the Target Parking lot and also faced towards Razzoo's property. The video was reviewed and compared to the timeline of events obtained from Razzoo's security video.

The suspect in the aggravated robbery is believed to be driving a white passenger car. At 11:33pm (Sunday night) a white passenger car is observed entering the Target parking lot from W South Town Dr. It drives through the parking lot and parks on the south end near the tree line that separates the Target parking lot and Razzoo's parking lot. The white passenger car parks, facing Razzoo's.

At 11:54pm, the white passenger car leaves the parking lot (traveling north through the parking lot). It is believed that it then travel [sic] east on W South Town Dr, turning south on S Broadway Ave, then west onto Thigpen Dr. The white passenger car re-enters the Target parking lot and returns to the same parking spot at 11:56pm.

At 12:19am, the suspect is observed exiting the vehicle, on the driver's side, and walks towards Razzoo's.

At 1:32am, the [sic] Delapiedra exits the restaurant.

At 1:33am, the suspect and Delapiedra re-enter the restaurant.

At 1:45am, suspect is seen exiting the restaurant.

At 1:46am, the suspect is observed re-entering the white passenger car. The suspect vehicle is last seen exiting the Target parking lot, traveling east on Thigpen Dr. towards S Broadway Ave.

On November 20, 2018, Affiant received a phone call from Delapiedra. Delapiedra was able to access his cellular device information through his online account. He advised that the device was last synced on November 19 at 1:54am. According to the "Find your phone" information, the cell device's last known location showed to be in the area of County Road 149 (New England Rd), Flint, Smith County, Texas. Delapiedra [sic] was able to provide me with the last known longitude and latitude coordinates; 32.1869745,-95.325358. The area where these coordinates return is a residential area, in between County Road 149 and Stoneridge Dr. (these roads run parallel to one another). I responded to this area. I noted that the information provided on the cellular device's last known location (drop point) was directly behind a duplex residence, address of 4140 and 4142 Stoneridge Dr., Flint, Texas. In front of 4142 Stoneridge, I observed a white Kia passenger car bearing Texas License Plate: HGD0290. In front of 4140 Stoneridge, I observed a white Lexus passenger car bearing Texas License Plate: BLL6049. I observed a black male subject carrying items to the white Lexus. I observed that the subject's

4

physical description (approximate height and weight) matched what Delapiedra had described of the suspect. While waiting for additional detectives to arrive in the area, the subject and the white Lexus passenger car left the residence. Contact was made with Dequavion Johnson and Quanisha Johnson. They identified the subject that left in the white Lexus passenger car as Gabriel Johnson. D. Johnson did not know what Johnson does for work. D. Johnson did not want to provide me with Johnson's contact number. He said that Johnson occasionally stays at the home, but also lives in Henderson, Texas. Q. Johnson said that she did not see Johnson Sunday evening, but says that she saw him the following day.

I conducted an in-house database search and located information on Gabriel Lamando Johnson. Johnson's Texas Driver License information shows his height to be 6'00 and weight of 192lbs. A Criminal History Search was done and showed Johnson to have the following convictions: Burglary of Habitation; Poss Marij <=5lbs > 4oz; (x2) Man/Del CS PG 1 >= 4G < 200G; (x2) Evading Arrest or Detention; Tampering/Fabricating Physical Evidence. I learned that Johnson is currently on parole unit 2029. I contacted the Tyler Parole Office and spoke to Johnson's assigned officer, Officer J. Burks. I learned that the phone number on file for him is (936)-553-6513.

I attempted to call the number provided for Johnson and did not get an answer. An audio recording indicated that the number had been changed or disconnected.

I contacted Erika Mallard. Mallard is the mother of Dequavion Johnson and Quanisha Johnson. She is Gabriel Johnson's significant other. She provided me Johnson's contact number: (936)-553-6513. She said that Johnson stays in the home off and on. I told Mallard that I attempted to call that number and it is no longer working. Mallard was aware that the police had been to her house. She said she talked to Johnson earlier to ask him what was going on. She said that he told her he did not know, but he would find out. Mallard said that she was not sure if Johnson stayed at the residence Sunday night; "He's in and out a lot." She did not know if Johnson works. Mallard said that she had to pick up her youngest daughter up from her sister on Sunday evening and got home around 9:00pm. He was not home at that time. Mallard said that the white Lexus passenger car belongs to Johnson.

I contacted Johnson's mother, Essie Madkins. Madkins said that Johnson resides at her home, located at 6501 CR 3181 E. Garrison, Texas. She said that she last saw him on November 18 around 2:00pm. When she returned home around 8:00pm, he was not there and she has not seen him since.

On November 21, I attempted to call Johnson and did not get an answer. An audio recording indicated that the number had still been changed or disconnected. Verizon Wireless was contacted and I was advised that they are the carrier for this wireless number.

I made phone contact with the resident of 4142 Stoneridge Dr., who was identified as Melvin Massenburge. He stated that the white Kia passenger car, bearing Texas License Plate: HGD0290, belongs to his significant other, Shatrica Williams. I asked him about seeing the white Lexus at his neighbor's house on the night of November 18. He stated that he arrived home around 11:30pm, but could not say with complete certainty that the Lexus passenger car was there.

The information being requested is relevant to an ongoing criminal investigation and is furthermore considered evidence of the crime, Aggravated Robbery.

5

The search of Appellant's and Delapiedra's CSLI showed that Appellant's phone was present in the general area of Razzoo's from November 18 at 11:33 p.m. until November 19 at 1:48 a.m., and both phones traveled south from Tyler and then west between 1:48 and 1:54.

Appellant was charged by indictment with aggravated robbery. He pleaded "not guilty" and filed a pretrial motion to suppress all evidence seized by the police—including his phone's CSLI—alleging that the police violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 9, 10, and 19 of the Texas Constitution; and Article 38.23 of the Texas Code of Criminal Procedure. At a hearing on the motion, Appellant argued that the supporting affidavit failed to articulate sufficient probable cause to search his phone records because the affidavit contained no (1) evidence that a phone was associated with or used during the robbery, (2) mention of his phone except that the affiant tried to call him, (3) "boilerplate language" stating that everyone has a cell phone and carries it, or (4) statement that the affiant suspected the phone contained evidence of the robbery. The trial court granted the motion regarding the phone's contents, email addresses associated with the account, texts, and MMS messages, and denied the motion regarding the CSLI.

At trial, Appellant objected to the CSLI's admission, and the trial court overruled the objection. At the close of the State's case in chief, Appellant moved for a directed verdict, arguing that the State failed to present a prima facie case. The court denied the motion. Ultimately, the jury found Appellant "guilty," found two enhancement paragraphs "true," and assessed Appellant's punishment at imprisonment for life. This appeal followed.

**PROBABLE CAUSE**

In Appellant's first issue, he argues that the trial court erred in denying his motion to suppress regarding the CSLI because Detective Fite's affidavit did not establish probable cause. In his second issue, he argues that the court erred in overruling his objection to the CSLI's admission for the same reason.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 48

6

(Tex. Crim. App. 2010); **Shepherd v. State**, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. **Neal v. State**, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. **Maxwell v. State**, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. **State v. Ross**, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. **State v. Kurtz**, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. **Id.**

**Applicable Law**

Generally, under the Fourth Amendment, the State must obtain a warrant supported by probable cause before acquiring a phone's CSLI. **Carpenter v. United States**, 585 U.S. —, 138 S. Ct. 2206, 2221, 201 L. Ed. 2d 507 (2018). There is no implied warrant requirement in Article I, Section 9 of the Texas Constitution, but to comply with Section 9, a search for CSLI must be reasonable under the totality of the circumstances after considering the public and private interests at stake. **Holder v. State**, 595 S.W.3d 691, 704 (Tex. Crim. App. 2020). A search for CSLI, when conducted by the state in its traditional crime-fighting role, and absent exigent circumstances or another recognized law enforcement need, must be supported by probable cause to be reasonable. **Id.**

In determining probable cause, reviewing courts must consider the totality of the circumstances. **Angulo v. State**, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Although probable cause requires more than mere suspicion, it requires far less evidence than that needed to support a conviction or even a finding by a preponderance of the evidence. **Middleton v. State**, 125 S.W.3d 450, 457 (Tex. Crim. App. 2003). For probable cause to exist, there must be a fair probability of finding inculpatory evidence at the location being searched. **Marcopoulos v. State**, 538 S.W.3d 596, 600 (Tex. Crim. App. 2017). A mere desire to learn the movements or location of a suspect is not probable cause to obtain CSLI from his cell phone service provider. **Stocker v. State**, 656 S.W.3d 887, 906 (Tex. App.—Houston [14th Dist.] 2022, pet. granted). The facts contained in the affidavit must evince a fair probability that the police will find

7

inculpatory location information indicating that a specific person committed a particular offense. *Id.*

Reviewing courts have a duty to ensure a magistrate had a substantial basis for concluding that probable cause existed. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). We give great deference to a magistrate's probable cause determination, including an implicit finding of probable cause. *State v. McLain*, 337 S.W.3d 268, 271-72 (Tex. Crim. App. 2011). Even in a close case, we give the probable cause determination great deference to encourage police officers to use the warrant process. *Duarte*, 389 S.W.3d at 354. When in doubt, we defer to all reasonable inferences the magistrate could have made. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). A reviewing court should not invalidate a warrant by interpreting the affidavit in a hyper-technical rather than commonsense manner. *Id.* at 61 n.25; *McLain*, 337 S.W.3d at 271-72.

## Analysis

Appellant contends that the trial court erred by denying his motion to suppress the CSLI evidence because Detective Fite's affidavit fails to establish a nexus between his phone and the robbery. Citing Texas Code of Criminal Procedure Article 18.0215(c)(5)(B)[1] and *State v. Baldwin*, 664 S.W.3d 122 (Tex. Crim. App. 2022), *cert. denied*, — U.S. —, 143 S. Ct. 777, 215 L. Ed. 2d 47 (2023),[2] he argues that the affidavit was required to contain sufficient facts to

---

[1] Article 18.0215 is titled "Access to Cellular Telephone or Other Wireless Communications Device" and provides in pertinent part as follows:

> (c) A judge may issue a warrant under this article only on the application of a peace officer. An application must be written and signed and sworn to or affirmed before the judge. The application must:
>
> . . . .
>
> (5) state the facts and circumstances that provide the applicant with probable cause to believe that:
>
> (A) criminal activity has been, is, or will be committed; and
>
> (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A).

TEX. CODE CRIM. PROC. ANN. art. 18.0215(c) (West Supp. 2023).

[2] In *Baldwin*, the court of criminal appeals held that to support probable cause to search a cell phone, an affidavit must contain facts and reasonable inferences establishing a nexus between the phone and the offense. *State v. Baldwin*, 664 S.W.3d 122, 123, 134 (Tex. Crim. App. 2022), *cert. denied*, — U.S. —, 143 S. Ct. 777, 215 L. Ed. 2d 47 (2023).

establish probable cause that "a cellphone search" was likely to produce evidence in the robbery investigation. However, the search at issue here was not of Appellant's cell phone but of Verizon's records of his phone's CSLI. To support this type of search, an affidavit need not establish a nexus between the phone and the offense, but, because we live in a society in which our phones go wherever we go, facts establishing a nexus between the phone's owner and the offense may suffice in some instances. *See Carpenter*, 138 S. Ct. at 2217-18 ("A cell phone— almost a feature of human anatomy—tracks nearly exactly the movements of its owner . . . . [People] compulsively carry cell phones with them all the time.") (internal quotation and citation omitted); *see also Stocker*, 656 S.W.3d at 908 (affidavit that contained no facts establishing nexus between appellant's phone and murder but linked appellant to murder weapon was sufficient to support CSLI search).

Because the search here was not of Appellant's phone but of Verizon's CSLI records, to support the probable cause determination in this case, the affidavit was required to contain sufficient facts from which the magistrate could reasonably determine there was a fair probability that those records contained CSLI evidence that would implicate Appellant in the robbery. *See Marcopoulos*, 538 S.W.3d at 600; *Stocker*, 656 S.W.3d at 906. We conclude that it did. The totality of the circumstances described in the affidavit—including the theft of Delapiedra's phone by the robber, Appellant's presence at the last known location of Delapiedra's phone the day after the robbery, Appellant's conformity with the description of the robber, Appellant's car's conformity with the description of the robber's car, the inability of the people with whom Appellant lived to account for his whereabouts at the time of the robbery, Appellant's parole officer's and girlfriend's statements providing his phone number, and the recording stating that Appellant's phone number was changed or disconnected when Detective Fite tried to contact him—gave the magistrate a substantial basis to find probable cause that Verizon's records would reveal CSLI evidence implicating Appellant in the robbery by showing his phone was located at or near Razzoo's at the time of the robbery and near Delapiedra's phone during and shortly after the robbery. *See Carpenter*, 138 S. Ct. at 2218; *Stocker*, 656 S.W.3d at 908. Therefore, the search did not violate Appellant's federal or state rights against unreasonable searches, and the trial court did not err in denying Appellant's motion to suppress the CSLI or overruling his objection to its admission. *See Carpenter*, 138 S. Ct. at 2221; *Holder*, 595 S.W.3d at 704. Accordingly, we overrule Appellant's first and second issues.

In Appellant's third issue, he argues that the trial court erred by denying his motion for directed verdict. In his fourth issue, he argues that the evidence is insufficient to support his conviction.

**Standard of Review and Applicable Law**

The *Jackson v. Virginia*[3] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2686-87, 61 L. Ed. 2d 560 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

"A criminal conviction may be based upon circumstantial evidence." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* When reviewing the sufficiency of the evidence, we consider the combined and cumulative force of all the evidence. *Id.* at 526. A challenge to the denial of a motion for

---

[3] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

directed verdict is essentially an evidentiary sufficiency challenge. *Rice v. State*, 195 S.W.3d 876, 879 (Tex. App.—Dallas 2006, pet. ref'd.).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To prove Appellant guilty of aggravated robbery as charged in this case, the State was required to prove that he, while committing theft of property, intentionally or knowingly threatened Delapiedra or placed him in fear of imminent bodily injury or death and used or exhibited a deadly weapon, namely a firearm. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2019).

**Analysis**

Appellant argues that the evidence, when the CSLI evidence is excluded, is insufficient to support a finding that he is the person who committed the robbery. In so arguing, he emphasizes that the police found no evidence associated with the robbery when they searched his residence, and they failed to locate Delapiedra's phone. Despite these evidentiary shortcomings, we conclude that the identity evidence in this case, which includes the CSLI evidence, is sufficient.

The jury heard evidence that (1) a person driving a white passenger car parked near Razzoo's at 11:33 p.m. on November 18, (2) Appellant's cell phone was in the general area of Razzoo's at that time, (3) the driver exited the car and walked toward Razzoo's at 12:19 a.m. on November 19, (4) Delapiedra exited Razzoo's at about 1:32 and was forced back inside by the robber at 1:33, (5) the robber was a black man who stood 5'10" to 6'2" tall and weighed around 200 pounds, (6) the robber took Delapiedra's phone, (7) the robber exited Razzoo's at about 1:45, (8) the driver walked back to his car and left at 1:46, (9) Delapiedra's and Appellant's phones traveled south away from Tyler and then west during the period from 1:48 to 1:54, (10) Delapiedra's Google account indicated that his phone last connected to its network at 1:54 in an alley behind Appellant's girlfriend's duplex in Flint, (11) Appellant was seen at his girlfriend's duplex on November 20 loading a large amount of clothing into his white passenger car, (12) Appellant matched the description of the robber, (13) Appellant was unreachable at his phone

11

number after the police began their investigation, (14) Appellant missed his parole hearing scheduled about two weeks after the robbery, and (15) Appellant falsely identified himself when the police stopped him to execute the arrest warrant. Considering the combined and cumulative force of all the evidence and viewing the evidence in the light most favorable to the verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant is the person who committed the aggravated robbery in this case. *See* TEX. PENAL CODE ANN. § 29.03(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899; *Merritt*, 368 S.W.3d at 525. Accordingly, we overrule Appellant's third and fourth issues.

## DISPOSITION

Having overruled Appellant's first through fourth issues, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered January 10, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 10, 2024**

**NO. 12-22-00270-CR**

**GABRIEL LAMANDO JOHNSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0594-19)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*