

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAYLON WILLIAMS-CRANE, | § | No. 08-24-00050-CR |
| | | No. 08-24-00051-CR |
| Appellant, | § | No. 08-24-00052-CR |
| v. | § | Appeal from the |
| THE STATE OF TEXAS, | § | 451st Judicial District Court |
| Appellee. | § | of Kendall County, Texas |
| | | (TC# 8952, 8953, 8954) |

## MEMORANDUM OPINION[1]

In three separate indictments, Appellant, Jaylon Williams-Crane, was alleged to have (1) knowingly or intentionally possessed with intent to deliver more than four but less than 200 grams of cocaine, (2) knowingly or intentionally possessed with intent to deliver more than four but less than 200 grams of phenazepam, and (3) knowingly or intentionally possessed less than a gram of methamphetamine. The three cases were consolidated for trial. A jury found Appellant guilty on all three charges, and the trial court assessed punishment at 25 years' confinement, 21 years' confinement, and two years' confinement, respectively, with the sentences to run concurrently.

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

In three issues on appeal, Appellant asserts (1) the trial court erred by denying his motion to suppress, (2) the trial court erred by allowing Detective Goudreau to testify as an expert, and (3) the evidence is insufficient to support the jury's finding that Appellant had care, custody, and control over the narcotics found in the car. We affirm.

## I. BACKGROUND

Boerne Police Department Officer Ryan Jennifer Cook testified that on July 11, 2022, she responded to a parking violation call about a vehicle in an HEB parking lot. As she approached the vehicle, she observed that it was parked across several lanes, including a fire lane, and a man identified as Appellant appeared to be sleeping in the driver's seat. No one else was inside the vehicle. Initially, she thought Appellant was either having a medical emergency or merely sleeping. Officer Cook noticed a "large amount of green leafy substance all over his body on top of his clothing[.]" The window was down, and she smelled "a strong odor of marijuana emitting from inside the vehicle."

When she approached, Appellant woke up and they began to talk. Officer Cook said she asked Appellant to exit the vehicle so she could determine whether he needed medical assistance or had merely been sleeping. She handcuffed Appellant and seated him in the backseat of her patrol car, as he was "groggy," "heavy footed," had begun to "wobble," and she did not want him to fall.

On cross-examination, Officer Cook was asked about what made marijuana illegal and whether one could smell the difference. She responded that "the level of the THC . . . makes the marijuana illegal" but one could not smell the difference between legal marijuana (commonly known as hemp) and illegal marijuana because they smell and look the same. She admitted she asked Appellant to exit his car based on the smell of marijuana. Officer Cook agreed with defense counsel that "having a lot of money" on a person is a characteristic of someone accused of selling

2

drugs. Appellant had over $700 in cash in his front pocket. She said Appellant explained that he had cashed a check from work. Appellant told Officer Cook the car was a rental and his girlfriend's friends had access to the car. Officer Cook agreed it was possible to get into a car and not know what was in the center console, glove box, or between the seats.

As Officer Cook transported Appellant to the police station in Boerne, she asked him if he had anything else on his person. Appellant replied, "not that I know of" and "if something falls out it's a little piece of weed." Officer Cook understood "weed" to mean illegal marijuana, not hemp. Regarding probable cause to search the car, Officer Cook said the odor of marijuana gave her probable cause to search the car and locate the source of the smell; therefore, she did not need a search warrant.

Boerne Police Department Detective Brandon Goudreau testified that in July 2022, he was a patrol officer and K-9 handler, and he responded to a "welfare concern" dispatch call about an individual asleep in his car in the backside of a parking lot. As Detective Goudreau drove up to the scene, he saw Officer Cook and Appellant standing outside both cars. He said Appellant's car was parked in a fire lane and across three different parking spots. Detective Goudreau testified that as he walked up to Officer Cook and Appellant, he could smell "an overwhelming smell of marijuana emanating from the vehicle." The detective testified that it "appeared that [Appellant] was stumbling or was unable to keep his balance."

Officer Cook and Detective Goudreau both testified about what was found either in the car's center console or the passenger-side seat, including: a bag of "baseball size[d]" marijuana, 16.94 grams of cocaine, over 100 small baggies used to package narcotics,[2] 22 grams of

---

[2] The small baggies had a black label with little gold skeletons.

3

phenazepam[3], pills packaged in small individual baggies, a digital scale with what appeared to be drug residue on it, and identification cards from two other individuals. Three pills (two of which were in a small plastic bag that matched the small bags and pills in the car) and approximately $700 in cash were found inside Appellant's pockets.

After searching the car, Detective Goudreau walked back to Officer Cook's patrol car and read Appellant his *Miranda* rights. He then said to Appellant, "You don't want to talk about the stuff in the car?"[4] Appellant replied, "I don't know nothing about the [unintelligible], it's a rental car." Detective Goudreau conducted a secondary search of Appellant, and Appellant said he did not know anything about what was found in the car. Detective Goudreau said he did not believe Appellant and he thought Appellant possessed the drugs found in the car.

Detective Goudreau testified that the smaller pills in the baggies appeared to be Xanax, based on his previous experience and training. He said he was familiar with the street value of Xanax, but defense counsel objected to a lack of predicate when the detective was asked what it sold for in San Antonio. Detective Goudreau was then asked about his background. He testified that he had been "trained in narcotics based on the sale and distribution level, the usage of narcotics, the effects on the brain and the body from narcotics, and basic narcotics sales." As part of his training and experience, he had worked with the sale of narcotics and was familiar with prices in the area. He said he had been working in narcotics since 2018 or 2019.

After testifying about his background, Detective Goudreau was again asked about the typical sales price of Xanax, and defense counsel objected that he had not been designated as an

---

[3] Detective Goudreau said that when he submitted the pills for testing at the lab, he believed the pills were Xanax. The weights are based on Detective Goudreau's field tests.

[4] Detective Goudreau did not tell Appellant what "stuff" had been found.

expert. The State countered that the testimony was based on Detective Goudreau's "common knowledge regarding narcotics" and his training. Defense counsel responded that the value of something is an opinion based on expert knowledge, and Detective Goudreau had not been designated as an expert. The trial court overruled the objection and allowed the testimony as to value "to the extent that it is within his common knowledge" but said defense counsel "could relodge an objection on another question." Defense counsel made sure to clarify the grounds of his objection regarding the testimony of the sales price of Xanax before the bench conference ended.

When testimony resumed, Detective Goudreau was asked whether he had personal knowledge of how much Xanax and cocaine sold for. He responded that Xanax typically sold for $5 and $10 per pill, and cocaine for $80 to $100 per gram. He stated his opinion of the street value of Xanax was not based on personal knowledge but on his training.

Detective Goudreau believed any amount of cocaine over four or five grams would not be for personal use. He said that, based on his training and experience, the amount of pills and cocaine found, all the different types of plastic bags, the scale, and the amount of money indicated packaging and delivering of drugs. He explained that the plastic bags were typically used to package the drugs to be sold, and the scale was to weigh the amount of narcotics to put into the bags. He also said that pills found on Appellant matched the pills found in the car. When asked what makes marijuana illegal, Detective Goudreau replied that it depended on the amount of THC in the marijuana strain. Detective Goudreau said the smell of marijuana gave him probable cause to search the vehicle and the person inside the vehicle.

The final witness to testify was Tres Guerra, a forensic scientist with the Department of Public Safety, Austin Crime Lab who analyzed the substances taken from Appellant and his car.

He said the two pills thought to be Xanax were actually Phenazepam.[5] The two pills weighed 0.53 grams. The other pills, also phenazepam, weighed 3.98 grams. He weighed the cocaine, a Penalty Group I controlled substance, at 14.41 grams. He did not know the purity of the cocaine. Another tablet tested at less than one gram of methamphetamine, also a Penalty Group I controlled substance.

## II. MOTIONS TO SUPPRESS

Appellant filed a broad-brush motion to suppress in each case. As relevant here, he asserted that "[a]ny tangible evidence seized in connection with [the] case was seized without warrant, probable cause or other lawful authority in violation of [his] rights[.]" At the conclusion of the hearing on the motions, the trial court denied the motions to suppress. The court stated that "the smell of marijuana is enough to begin the search," and acknowledged that the officer "saw the shake and smelled marijuana." The court also determined that placing Appellant into the backseat of the patrol car was "more of a caretaking function."

In his first issue on appeal, Appellant asserts the trial court erred by overruling his motions to suppress (1) because the court improperly applied the community caretaking function to him, and (2) by justifying the search of the car based solely on the odor of suspected marijuana.

### A. Standard of review

We review a trial court's ruling on a motion to suppress for an abuse of discretion by applying a bifurcated standard of review. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We give the trial court nearly total deference in determining historical facts that depend on credibility and demeanor. *Id.* at 923. But we review de novo the trial court's resolution of whether

---

[5] Guerra testified that the pills were imprinted with the marking of and shaped like Xanax. He thought the average person would likely believe the pills to be Xanax.

a search was reasonable. *Igboji v. State*, 666 S.W.3d 607, 612 (Tex. Crim. App. 2023). We reverse "the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez*, 348 S.W.3d at 922.

### B. Community Caretaking

Without reasonable suspicion or probable cause that an offense has been committed, a police officer may, in accordance with his community caretaking function, "stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). The community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Corbin v. State*, 85 S.W.3d 272, 276–77 (Tex. Crim. App. 2002). To properly invoke the community caretaking exception, a police officer must (1) be primarily motivated by his community caretaking function, and (2) reasonably believe the individual needs help. *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012).

Appellant contends the community caretaking function did not justify placing him in the patrol car because he was not in distress. However, neither at the suppression hearing nor on appeal does he assert that evidence should be suppressed because the narcotics found in the car were the product of an illegal detention.[6] *See* Tex. R. App. P. 33.1(a)(1)(A) (an objection must be made with "sufficient specificity to make the trial court aware of the complaint"); 38.1(i) ("The brief must contain a clear and concise argument for the contentions made[.]"). Therefore, even assuming

---

[6] At the suppression hearing, defense counsel argued there was "not enough reasonable suspicion for them to order [Appellant] out [of his car]. He was not in medical distress. . . . Their community caretaking responsibility had ended at that point. They put him in the back seat of the car. They handcuffed him. For all intents and purposes, according to the totality of the circumstance, he was under arrest at that point, regardless of what they want to call it. And they did not have enough evidence . . . to satisfy probable cause to be [sic] in search of the vehicle based on what they had at that point[.]"

the caretaking function did not justify detaining Appellant, we conclude that probable cause to search the car existed prior to the time the officer handcuffed and placed Appellant in the patrol car, as explained below. *See Gomez v. State*, No. 04-20-00093-CR, 2020 WL 7232137, at *3 n.3 (Tex. App.—San Antonio Dec. 9, 2020, no pet.) (mem. op., not designated for publication) (not addressing whether seizure constituted reasonable community caretaking because detention was otherwise supported by reasonable suspicion).

### C. Probable cause to search the car

Under the Fourth Amendment, "a warrantless search is *per se* unreasonable unless it falls within a warrant exception." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017). Under the automobile exception, police may conduct a warrantless search of a vehicle if the vehicle is readily mobile and there is probable cause to believe the vehicle contains contraband. *Id.*; *Casarez v. State*, No. 04-22-00295-CR, 2024 WL 1864753, at *5 (Tex. App.—San Antonio Apr. 30, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that the "warrantless search of a vehicle is reasonable if the officers have probable cause").

"[P]robable cause is the accumulation of facts which, when viewed in their totality, would lead a reasonable police officer to conclude, with a fair probability, that a crime has been committed or is being committed by someone." *Parker v. State*, 206 S.W.3d 593, 599 (Tex. Crim. App. 2006); *Isaac v. State*, 675 S.W.3d 116, 119 (Tex. App.—San Antonio 2023, no pet.) (holding that "despite [defendant]'s argument that industrial hemp is now legal and indistinguishable from marijuana without a lab test, marijuana remains illegal, and the probable cause standard for police to detect it remains the same"). Here, we conclude that the totality of the circumstances provided sufficient evidence to satisfy the requirement of probable cause for a warrantless search of the car. *See Isaac*, 675 S.W.3d at 119 (concluding "totality of the circumstances provide[d] more evidence

8

than the odor and appearance of marijuana alone that Isaac probably possessed illegal contraband").

The police were first called to the scene because Appellant appeared to be sleeping in the driver's seat of his car, which was parked in a fire lane and across three different parking spots in an HEB parking lot. *See id.* (finding probable cause because, besides the odor and appearance of marijuana, defendant "behave[d] suspiciously after he remained parked at a gas pump for an hour and wandered around the store in a way that made the store's manager believe he was under the influence of something," moved two joints out of view, and "showed symptoms of intoxication"). Once he got out of the car, Appellant was "groggy," "heavy footed," and he had begun to "wobble." *See Al-Hanna v. State*, No. 08-17-00037-CR, 2019 WL 156779, at \*7 (Tex. App.—El Paso Jan. 10, 2019, no pet.) (not designated for publication) (noting that "classic signs that a person's mental and physical faculties might be impaired" include odor of alcohol emanating from person, slurred speech, and bloodshot eyes); *Isaac*, 675 S.W.3d at 120 (one of the observations considered by the court of appeals was that Isaac showed symptoms of intoxication, including sluggish movements and glassy eyes, when he exited his car).

A "strong" or "overwhelming" odor of marijuana emanated from inside the vehicle. Although the odor of marijuana may not be sufficient to conduct a warrantless search of a home, a different rule applies when the odor of marijuana has been detected in a confined space, such as a car. *Cortez v. State*, No. 08-23-00112-CR, 2023 WL 6199187, at \*11 (Tex. App.—El Paso Sept. 22, 2023, pet. ref'd) (mem. op., not designated for publication); *see also Parker*, 206 S.W.3d at 597 n.11 (recognizing officer during lawful traffic stop may have probable cause to believe person (or persons) inside small, enclosed area has been or is committing the offense of possession of marihuana if, "when the driver rolls down his window, the redolent odor of burnt marihuana wafts

9

out"). Therefore, the "odor of marijuana, as well as its appearance, can at least be part of the totality of the evidence supporting probable cause to investigate." *Isaac*, 675 S.W.3d at 119.

Officer Cook testified that, as she approached Appellant's car, she noticed a "large amount of green leafy substance all over his body on top of his clothing[.]" *See Pena v. State*, No. 04-22-00456-CR, 2023 WL 3856734, at *1, 3 (Tex. App.—San Antonio June 7, 2023, no pet.) (mem. op., not designated for publication) (concluding officer had probable cause to search interior of vehicle based on odor of marijuana coming from the vehicle and a green flakey substance in the cup holder that appeared to be marijuana residue); *Isaac*, 675 S.W.3d at 119–20 (one of the observations considered by the court of appeals was that Issac left two joints in his center console and Patrolman Ramirez recognized them as marijuana joints based on his training and experience).

We conclude these "facts and observations together with the odor of marijuana emanating from" Appellant's car established probable cause for the officers to search his car. *See Isaac*, 675 S.W.3d at 120. Therefore, based on this record, the trial court did not abuse its discretion when it denied Appellant's motions to suppress. Accordingly, we overrule Appellant's first issue.

### III. DETECTIVE GOUDREAU'S TESTIMONY

Before trial, Appellant filed motions requesting disclosure of the State's expert witnesses. The State designated and disclosed a single expert—Tres Guerra. At trial, Detective Goudreau testified about the street value of certain controlled substances. In his second issue, Appellant asserts the trial court abused its discretion by characterizing Detective Goudreau's testimony as a lay witness, so that he was allowed to testify despite the lack of notice. Appellant's complaint on appeal appears to have two components. First, he asserts the trial court erred because the State failed to provide notice of Detective Goudreau testifying as an expert as required by Texas Code of Criminal Procedure Article 34.14. Second, he asserts the trial court erred by allowing Detective

Goudreau to testify about the value of any controlled substance or whether the amount found was consistent with intent to deliver because the detective was not designated or qualified as an expert. We first consider whether Appellant preserved his complaints for our review.

To preserve error on appeal, the complaining party must make a timely and specific request, objection, or motion at trial and obtain an express or implied ruling on that request, objection, or motion. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); Tex. R. App. P. 33.1(a) (stating prerequisite to presenting a complaint for appellate review). "In addition, the complaining party must make an objection every time the complained-of evidence is offered 'unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury.'" *Juarez v. State*, No. 08-23-00297-CR, 2024 WL 4333184, at *5 (Tex. App.—El Paso Sept. 27, 2024, no pet.) (mem. op., not designated for publication) (quoting *Lopez*, 253 S.W.3d at 684); *see also* Tex. R. Evid. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.").

Appellant objected to Detective Goudreau's testimony when the State asked the detective about the typical sales price of Xanax. A bench conference followed:

> Prosecutor: Are you familiar with the prices for what Xanax is typically sold for here?
>
> Detective: Yes.
>
> Prosecutor: And can you tell the jury what that typically sells for?
>
> Defense counsel: Judge, I'm going to object. If I may approach?
>
> Court: You may approach.
>
> (Bench conference)

Defense counsel: This officer was not designated as an expert on the State's witness list.

.     .     .     .

Prosecutor: I said the expert designation regarding his common knowledge regarding narcotics and what he's trained in.

Defense counsel: This is not common knowledge, Judge. He's trying to qualify him as an expert. I'm objecting to that. He wasn't disclosed as an expert.

.     .     .     .

Court: Mr. Chapa [the prosecutor], he is not an expert in this case because you did not designate him as such is what I am hearing. And so the testimony–you can elicit his testimony based on–

.     .     .     .

Prosecutor: Judge, I do believe that what he's stating, again, is going to be an observation based on what he has there and based on the common knowledge that he has regarding these substances.

Defense counsel: My objection is that the opinion of the value of something is an expert–is an opinion based on expert knowledge. He was not qualified as an expert.

Court: So here's the deal. I'm going to overrule your objection, Mr. Locke [defense counsel], to the extent that it is within his common knowledge. So at this point, I'm going to overrule that objection, Mr. Locke. I'm going to let him testify based on his knowledge, okay?

.     .     .     .

Defense counsel: Okay.

Court:--and then we're going to stand on that ruling, okay? So I'm going to overrule your objection, and I will let him ask the question. You could relodge an objection on another question, but that certain objection has been overruled. So a discussion on that is going to be done.

Defense counsel: I understand. I just want to make sure that–my argument is that his opinion about the market values is not knowledge. That is an opinion. It is not–I didn't say anything different from that.

Court: I understand. And to the extent that I mischaracterized your . . . objection, it is my sincerest apology for that.

Defense counsel: I just want to make sure that I did not waive that objection.

Although at the bench conference Appellant preserved the objection regarding expert testimony about the value of Xanax, Appellant did not lodge a similar objection when Detective Goudreau was asked about the street value of cocaine or what the amount of cocaine and pills found indicated to him (to which he responded "distribution"). *See* Tex. R. Evid. 103(a) (Preserving a Claim of Error); Tex. R. App. P. 33.1(a). Therefore, Appellant did not preserve for our review his complaints regarding Detective Goudreau's testimony about the street value of cocaine and whether the amount of cocaine and pills found in the car indicated an intent to distribute.

And even though Appellant preserved his objection to Detective Goudreau's testimony about the street value of Xanax, during defense counsel's cross-examination of Detective Goudreau, counsel specifically asked about the price of Xanax:

> Q. Other than the weight of this [not identified], do you have any evidence that he sold that narcotics [sic]?
>
> A. Yes.
>
> Q. So what evidence is that?
>
> A. The amount of packaging, the different types of plastic bags, the amount of money that was on him, the scale, and the amount of narcotics that was found in the vehicle indicated distribution of narcotics.
>
> .      .      .
>
> Q. You've received training in narcotics identification, correct?
>
> A. Yes.
>
> Q. And you mentioned that Xanax sells for $5 or $10 per pill, approximately?

A. Approximately, yes.

Q. And that's not based on your personal knowledge, it's based on your training, correct?

A. Correct.

Appellant contends he asked the question on cross-examination about the sale price of Xanax because the trial court only allowed the detective to testify about street value based on his personal experience, and the cross-examination revealed the source of his knowledge was his training. Therefore, according to Appellant, his question proved expert testimony was allowed to be brought in under the guise of a lay opinion. Appellant also argues he should be allowed "to vigorously cross-examine the witness after his objection was overruled." We disagree that Appellant had to ask the detective again about the value of Xanax to establish whether the knowledge was founded in his personal experience or training. Because Appellant elicited the same complained-of testimony from Detective Goudreau during his cross-examination, we conclude his argument on appeal is waived. *Garcia v. State*, No. 04-00-00363-CR, 2001 WL 840230, at *2 (Tex. App.—San Antonio July 25, 2001, no pet.) (not designated for publication) (error waived when defense counsel elicited similar testimony on cross-examination).

But even if we were to assume the trial court erred in admitting Detective Goudreau's testimony about the street value of the narcotics and the issue had been properly preserved for appeal, we conclude any such error did not result in reversible harm.[7] *See* Tex. R. App. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be

---

[7] To the extent Detective Goudreau testified about whether the amount of narcotics found was consistent with intent to distribute, on appeal, Appellant does not contest the jury's finding on this element of the offenses. *See* Tex. Health & Safety Code § 481.112(a) ("Except as authorized by this chapter a person commits an offense if the person knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1.").

disregarded."). "[S]ubstantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (internal quotation marks omitted). Stated conversely, "a substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).

Our assessment of harm encompasses a review of the entire record. *Motilla*, 78 S.W.3d at 355. We consider "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

Despite Appellant's contention that Detective Goudreau's testimony about street value was "crucial evidence," we note that the value of the narcotics was not relevant to the issue of whether Appellant "possessed" the narcotics or to the punishment range, which was based on quantity. *See* Tex. Health & Safety Code Ann. § 481.112 (defining the offense and providing punishment range based on aggregate weight). Guerra testified that the crime lab tests only to the highest punishment range, which in this case was over four grams. He stated testing for a higher quantity does not change the punishment because "the punishments go from 4 grams to 200 grams."

The value of the narcotics was not mentioned during the State's opening statement and, during closing arguments, the State only briefly alluded to value: "[h]e told you that this sells for $80 to $100 a gram. . . . I told you about the price of what they [the pills] sell for. You do the math, how much money he had in those pills . . . ."[8] The jury charge contained no instruction regarding

---

[8] The final closing argument by the State encompassed almost twelve pages of the reporter's record.

the value of the narcotics. Finally, as explained further below, the evidence supports the jury's finding that Appellant exercised care, custody, control, or management over the narcotics. After examining the entirety of the record, we have a fair assurance that the error, if any, did not influence the jury and Appellant's substantial rights were not affected.

For these reasons, we overrule Appellant's second issue.[9]

## IV. SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant contends the evidence is insufficient to support the jury's finding that he had care, custody, and control over the narcotics found in the car. On appeal, Appellant does not assert the evidence is insufficient to support the jury's finding on intent to deliver.

### A. Standard of review

"In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*,

---

[9] Because we do not address whether Detective Gaudreau should have been qualified as an expert, we do not reach the issue of whether the trial court erred because the State failed to provide notice of him testifying as an expert. *See* Tex. R. App. P. 47.1 ("court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal"). Moreover, although Appellant initially objected that Detective Goudreau had not been designated as an expert, he did not obtain a ruling on this objection. Instead, Appellant clarified his objection to the trial court as "the opinion of the value of something is an expert–is an opinion based on expert knowledge. He was not qualified as an expert. . . . I just want to make sure that–my argument is that his opinion about the market values is not knowledge. That is an opinion." *See* Tex. R. App. P. 33.1(a)(1)(A) (complainant must "stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding *Jackson* legal-sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt").

We defer to the trier of fact to "resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13. "In reviewing the sufficiency of the evidence, we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the defendant's guilt as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Id.*

### B. Applicable law

All three charges required the State to prove that Appellant exercised care, custody, control, or management over the narcotics found in the car, and that he knew the substances were contraband.[10] *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); Tex. Health & Safety Code Ann. §§ 481.112(a) (defining offenses); 481.002(38) ("'Possession' means actual care, custody, control or management."). "The issue is whether the evidence . . . support[s] a

---

[10] On appeal, Appellant does not contend that he did not know the substances were contraband.

17

reasonable inference that the defendant knowingly possessed the contraband." *See Williams v. State*, 478 S.W.3d 947, 949 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Appellant contends he was not in possession of the narcotics found in the car because the car was a rental car that others may have used prior to the police officers' arrival, as evidenced by other ID cards in the center console. Appellant, as the only person in the car, had exclusive control of the car when the narcotics were found. "That Appellant was alone in the vehicle he was driving serves as evidence he exercised dominion or control over the vehicle in which the contraband was concealed, and he may therefore be deemed to have possessed the contraband." *Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref'd). A defendant's "[m]ere presence at the location where drugs are found is [] insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id.* The elements of possession may be proven through direct or circumstantial evidence, although the evidence must establish that a "defendant's connection with the drug was more than fortuitous." *Evans*, 202 S.W.3d at 161; *Vega v. State*, No. 04-23-00086-CR, 2023 WL 8607035, at *2 (Tex. App.—San Antonio Dec. 13, 2023, no pet.) (mem. op., not designated for publication).

"A link 'generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it.'" *Espino-Cruz v. State*, 586 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citation omitted). "Affirmative links" may include the following:

> (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics

when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.; Tate*, 500 S.W.3d at 414; *Coronado*, 2023 WL 7005851, at *3. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see also Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976) (holding that absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present).

### C. Analysis

Here, several facts and circumstances link Appellant to the narcotics, including: (1) he was present in the car by himself when the search was conducted; (2) he had the right to possess the car in which the narcotics were found; (3) the narcotics were in the front passenger area and thus close to and accessible by Appellant; (4) marijuana and pills were found on Appellant; (5) the pills found on Appellant matched those found in the car; (6) two of the pills found on Appellant were in a small plastic bag that matched the small plastic bags in the car; (7) he said he did not know anything about what was found in the car despite not being told what had been found in the car; (8) the strong odor of marijuana emanated from the car; (9) drug paraphernalia was present; (10) some of the narcotics were found in the closed center console; (11) Appellant was found with a large amount of cash; and (12) Appellant appeared to be under the influence of narcotics.

We conclude that the State proved sufficient affirmative links tying Appellant to the narcotics such that the jury could reasonably infer that Appellant knew of the contraband's existence and possessed it. *Evans*, 202 S.W.3d at 162; *see also Shoen v. State*, *Vega*, No. 04-22-00022-CR, 2023 WL 4095251, at *5 (Tex. App.—San Antonio 2023, no pet.) ("In other words, evidence affirmatively linking the defendant to the contraband suffices for proof that he possessed it knowingly."). Therefore, we overrule Appellant's third issue.

## V. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

LISA J. SOTO, Justice

December 19, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)